975 P.2d 1145

James FINLEY and Vanida Finley, Respondents-Appellants/Cross–Appellees,

v.

The HOME INSURANCE COMPANY, and A & A of Hawaii, Defendants, and Hawaii Insurance Guaranty Association, Petitioner–Appellee/Cross–Appellant.

No. 20830.

Supreme Court of Hawaiʻi.

Dec. 30, 1998.

Kevin P.H. Sumida of Matsui Chung Sumida & Chang, on the briefs, for petitioner-appellee/cross-appellant.

Jerry M. Hiatt, Carl H. Osaki and Michael W. Thomas of Bays, Deaver, Hiatt, Lung & Rose, on the briefs, for respondents-appellants/cross-appellees.

Before MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, AND RAMIL, JJ.

Opinion of the Court by NAKAYAMA, J.

We granted certiorari to review the opinion of the Intermediate Court of Appeals (ICA), which held that defendant-appellee/cross-appellant Hawai'i Insurance Guaranty Association (HIGA), having retained counsel to defend the underlying action under a reservation of rights, was potentially additionally responsible for reimbursement of attorneys' fees for counsel personally retained by the insured. For the reasons which follow, we hold that the circuit court correctly determined that HIGA was not liable for the insured's additional attorneys' fees. We therefore affirm the circuit court's grant of summary judgment in favor of HIGA, reverse the opinion of the ICA, and order that the ICA's opinion in this case be depublished.

## I. BACKGROUND

On August 6, 1993, plaintiffs-appellants/cross-appellees James and Vanida Finley (the Finleys) filed a complaint against, *inter alia*, Aaron Properties, Inc. and Aaron Properties Partners of Hilo (collectively Aaron Defendants) for claims related to wrongful termination. The Aaron Defendants re-

tained Mark Bernstein to defend them in the action.

The Aaron Defendants were named additional insureds under a worker's compensation policy issued by the now insolvent Hawaiian Insurance & Guaranty Co., Ltd (HIG). Pursuant to HRS § 431:16-108 (1993),[1] HIGA assumed the handling of claims under policies issued by HIG. On or about April 2, 1994, the Aaron Defendants tendered the defense of the wrongful termination action to HIGA. HIGA accepted the tender under a reservation of rights.[2]

HIGA subsequently retained Alexander MacLaren and Michael Tom to represent the Aaron Defendants.[3] On August 17, 1994, MacLaren and Tom appeared as co-counsel with Bernstein. The Aaron Defendants continued to pay for Bernstein's services. However, HIGA reimbursed the Aaron Defendants for an amount attributable to the services rendered by Bernstein between April 2 and August 17, 1994. Moreover, on one occasion when MacLaren and Tom were unable to appear for a deposition, HIGA reimbursed Bernstein for his solo appearance at this deposition.

The parties entered into a stipulated settlement of the underlying action. On March 25, 1996, a judgment and order was entered by the circuit court in favor of the Finleys and against the Aaron Defendants in the amount of $2,261,272.93, plus post-judgment interest. On or about March 14, 1996, a written assignment of claims and mutual release of claims was entered into between the Aaron Defendants and the Finleys. This assignment provided, *inter alia*, for the as-

---

1. This statute provides, in pertinent part, that HIGA shall:

 (1) Be obligated to the extent of the covered claims existing prior to the determination of insolvency, which the insolvent insurer would have been legally obligated to pay but for its insolvency[.]

 (2) Be deemed the insurer, but only to the extent of its obligation on covered claims and to that extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent[.]

 . . .

 (4) Investigate claims brought against the association and adjust, compromise, settle and pay covered claims to the extent of the association's obligation[.]

2. Although all the parties agree that HIGA accepted the tender under a reservation of rights, the record does not include a copy of any acceptance letter or any other document, specifically enumerating the grounds for such reservation. Because the specific grounds for the reservation of rights are not material to the outcome of this appeal, this omission does not affect our disposition of the case.

3. The policy issued by HIG provided that "We[, the insurer,] have the right and duty to defend at our expense any claim, proceeding or suit against you[, the insured,] for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits."

signment to the Finleys of all claims for unreimbursed attorneys' fees, costs, and expert witness fees owed by the Aaron Defendants. Subsequently, the Finleys, the Aaron Defendants, and HIGA negotiated a settlement of the judgment, by which HIGA agreed to pay the sum of $100,000 to the Finleys. This settlement released HIGA from any further liability for the judgment, although HIGA allegedly agreed that it did not release any potential liability for unreimbursed attorneys' fees owed by the Aaron Defendants to Bernstein.

On April 12, 1996, the Finleys filed the instant action against HIGA for (1) breach of settlement agreement for failing to pay $100,000 (Count V),[4] (2) reimbursement of attorneys' fees incurred by the Aaron Defendants (Count VI), and (3) bad faith (Count VII).[5] On May 24, 1996, the Finleys filed a motion for partial summary judgment against HIGA on counts V, VI and VII. On June 17, 1996, HIGA filed a motion for partial summary judgment on counts V, VI and VII. A hearing on both motions was conducted on June 27, 1996. After the hearing, the circuit court granted summary judgment in favor of HIGA on counts VI and VII. The court's order stated that:

> With respect to Count V, there is a genuine issue of material fact as to the terms and conditions of the settlement agreement between Plaintiffs Finley and Defendant HIGA. Therefore, the motion is denied as to Count V.
>
> With respect to Count VI, the Court finds that the *Cumis* doctrine[6] is not recognized in Hawai'i. Defendant HIGA, as the insurer, is not obligated to pay for

attorneys' fees for independent counsel or personal counsel hired by Plaintiffs Finley. Accordingly, the Motion is granted as to Count VI.

> With respect to Count VII, the Court finds that Hawaii Revised Statutes, [§ ] 431:16–116 clearly and unambiguously provides that there shall be no liability on the part of HIGA for any action taken by HIGA in the performance of its powers and duties. Therefore, the motion is granted as to count VII.

On August 19, 1996, HIGA and the Finleys entered into a written release and indemnity agreement wherein HIGA paid the Finleys $100,000 in full satisfaction of any and all obligations related to the underlying action. However, this release specifically excluded "the rights and claims, if any, of [the Finleys] for reimbursement of attorneys' fees and costs incurred by the [Aaron] defendants named in the underlying lawsuit in the defense of said underlying lawsuit[.]" The parties agree that this agreement rendered Count V of the Finleys' complaint moot.

On October 30, 1996, HIGA filed a motion for attorneys' fees and costs seeking $35,292.50 in fees and costs.[7] On December 16, 1996, the circuit court entered an order stating that "[t]he Court finds reasonable attorneys' fees to be $11,764.00 and taxable costs to be $264.00 for a total of $12,028.00."

On October 22, 1996, the circuit court granted the Finleys' motion for certification pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b). On July 2, 1997, the circuit court entered an amended final judgment in favor of HIGA and against the Fin-

---

4. Although it is unclear from the record on appeal, it appears that no formal, written settlement agreement had been signed at the time the complaint was filed.

5. The complaint contained additional claims against the Home Insurance Company (Home). The Aaron Defendants were insureds under a commercial general liability policy issued by Home. Home refused to defend the Finleys' complaint in the underlying action. Home is not a party to the instant appeal, and the claims against Home are not a subject of this appeal.

6. Referring to the opinion of the California Court of Appeal of the Fourth District in *San Diego Navy Fed. Credit Union v. Cumis Ins. Soc., Inc.*,

162 Cal.App.3d 358, 208 Cal.Rptr. 494 (Cal.App. 1984).

7. Although the motion does not state how much of this figure is attributable to attorneys' fees and how much to costs, HIGA's appellate brief states that HIGA was entitled to "$24,079.22" in attorneys' fees and "$2,911.55" in taxable costs. HIGA does not explain the discrepancy between the amount it now says it was entitled to and the amount it requested in the action below. For purposes of this appeal, the discrepancy is immaterial.

leys on all claims concerning HIGA contained in the Finleys' complaint. On July 15, 1997, the Finleys filed their notice of appeal of the amended final judgment. On appeal, the Finleys argue that the circuit court erred in entering summary judgment in favor of HIGA on Count VI. The Finleys argue that the *Cumis* doctrine should be recognized in Hawai'i and that the recognition of this doctrine would impose liability on HIGA for reimbursement of the attorneys' fees incurred by Bernstein. On July 29, 1997, HIGA filed a cross-appeal. In its cross-appeal, HIGA claims that the circuit court erred in reducing its request for attorneys' fees and costs.

This appeal was assigned to the ICA. On August 28, 1998, the ICA issued an opinion vacating the circuit court's grant of summary judgment on count VI (the ICA's opinion). In its opinion, the ICA stated that:

> The sole issue on appeal is whether an insurer, who provides a defense under a reservation of rights, is also required to pay for independent counsel for an insured. We conclude that where a conflict of interest arises between an insurer and an insured, because the insurer has reserved its right to assert noncoverage at a later date, the insurer is required to pay for independent counsel for the insured.

ICA's opinion at 7 (footnote omitted). Specifically, the ICA held that

> a reservation of rights can create a conflict of interest if "the insurer's reservation of rights on the ground of noncoverage [is] based on the nature of the insured's conduct, which as developed at trial would affect the determination as to coverage." When such a conflict of interest exists, the insurer is obligated to either obtain informed consent of the insured to the conflict of interest, or must pay the reasonable cost for hiring independent counsel by the insured.

ICA's opinion at 24 (quoting *McGee v. Superior Court*, 176 Cal.App.3d 221, 221 Cal. Rptr. 421, 423 (1985)). The ICA vacated the judgment of the circuit court and remanded the case for determination of (1) whether a "conflict of interest existed" because the reservation of rights was based on the nature of

the Aaron Defendants' conduct and (2) whether HIGA or the retained attorneys, MacLaren and Tom, obtained the informed consent of the Aaron Defendants to the "conflict of interest." ICA's opinion at 25. The ICA's opinion implied that, if there were a conflict of interest, as defined in the opinion, and no consent by the Aaron Defendants, then HIGA would be liable for the attorneys' fees incurred by Bernstein in representing the Aaron Defendants, the claim for which has now been assigned to the Finleys.

We granted certiorari to address the issues of (1) whether a conflict of interest arises when an insurer defends its insured under a reservation of rights based on the nature of the insured's conduct and (2) the appropriate remedy for such a conflict of interest, whether actual or perceived. While this question has generated a significant amount of litigation across the nation, it is an issue of first impression in this jurisdiction.

## II. DISCUSSION

**A. An insurer who defends its insured under a reservation of rights is not necessarily required to pay for separate counsel, who has been chosen and retained by the insured.**

### 1. Overview of the issue

The tripartite relationship between insurer, insured and insurance defense counsel is unique. In no other area of the law are parties routinely represented by counsel selected and paid by a third party whose interests may differ from those of the individual or entity the attorney was hired to defend. The potential for conflict is inherent in the tripartite relationship.

Douglas Richmond, *Walking a Tightrope: The Tripartite Relationship Between Insurer, Insured and Insurance Defense Counsel*, 73 Neb. L.Rev. 265, 270 (1994) (footnotes omitted) (hereinafter "Tripartite Relationship").

■ Where a complaint alleges grounds that are both within and without the scope of insurance coverage, the insurer is required to defend the entire action. *See First Ins. Co. of Hawaii, Inc. v. State*, 66 Haw. 413, 417,

665 P.2d 648, 652 (1983) ("Where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage.").

Assuming that the reservation of rights is the result of allegations of conduct by the insured both within and without the scope of insurance coverage, the insurer and the insured will have divergent economic interests in the outcome of the litigation.

> When an insurer provides an unconditional defense for its insured, the insured and the carrier share the same goal—minimizing or eliminating liability in the third party action—and no conflict of interest inhibits the ability of one lawyer to represent both the insurer and its insured. But where the carrier questions the availability of coverage and provides a defense in the third party action subject to a reservation of rights, a conflict exists—because the insured's goal is coverage, which flies in the face of the insurer's desire to avoid its duty to indemnify.

*Rockwell Int'l Corp. v. Superior Court of Los Angeles*, 26 Cal.App.4th 1255, 32 Cal.Rptr.2d 153, 158 (Cal.App.1994). "An insurer's reservation of rights presents a potential conflict of interest because the insurer may be more concerned with developing facts showing non-coverage than facts defeating liability." Douglas Richmond, *Lost in the Eternal Triangle of Insurance Defense Ethics*, 9 Geo. J. Legal Ethics 475, 486 (1996) (internal quotation marks and footnote omitted) (hereinafter "Eternal Triangle").

Several jurisdictions have adopted the view that an attorney retained by an insurer to defend an insured under a reservation of rights cannot adequately represent the insured's interest because of the conflict inherent in the relationship. The United States Court of Appeals for the Eighth Circuit has concluded that

> it is impossible for one attorney to adequately and fairly represent two parties in litigation in the face of the real conflict of interest which existed here. Even the most optimistic view of human nature requires us to realize that an attorney employed by an insurance company will slant his efforts, perhaps unconsciously, in the interests of his real client—the one who is paying his fee and from whom he hopes to receive future business—the insurance company.

*United States Fidelity & Guar. Co. v. Louis A. Roser Co.*, 585 F.2d 932, 938 n. 5 (8th Cir.1978).

To resolve this perceived problem, many jurisdictions require the insurer to appoint "independent counsel" for the insured, paid for by the insurer. This counsel is commonly referred to as *"Cumis* counsel," following the case referenced *supra* at note 6. In California, subsequent to the adoption of this requirement by the courts, the legislature codified the duty to provide independent counsel in 1987. The California statute addresses many issues which surfaced after the courts implemented the independent counsel requirement. It states that:

> (a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel. An insurance contract may contain a provision which sets forth the method of selecting that counsel consistent with this section.
>
> (b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits.
>
> (c) When the insured has selected independent counsel to represent him or her,

the insurer may exercise its right to require that the counsel selected by the insured possess certain minimum qualifications which may include that the selected counsel have (1) at least five years of civil litigation practice which includes substantial defense experience in the subject at issue in the litigation, and (2) errors and omissions coverage. The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. . . .

(d) When independent counsel has been selected by the insured, it shall be the duty of that counsel and the insured to disclose to the insurer all information concerning the action except privileged materials relevant to coverage disputes, and timely to inform and consult with the insurer on all matters relating to the action. . . .

(e) The insured may waive its right to select independent counsel by signing the following statement: "I have been advised and informed of my right to select independent counsel to represent me in this lawsuit. I have considered this matter fully and freely waive my right to select independent counsel at this time. I authorize my insurer to select a defense attorney to represent me in this lawsuit."

(f) Where the insured selects independent counsel pursuant to the provisions of this section, both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to participate in all aspects of the litigation.

Cal. Civil Code § 2860 (West 1998).[8] Thus, in California, where a "conflict of interest" arises due to an insurer's tender of a defense under a reservation of rights, the insured may have the right to select independent counsel to represent the insured in the action.

■ The Finleys argue that HIGA had a duty to pay for Bernstein's services. In support of their argument, the Finleys assert that "a conflict automatically arises whenever an insurer (1) accepts a defense under a reservation of rights; and (2) there are multiple claims in the complaint; and (3) the litigation of those claims has the potential of relieving the insurer of liability under its policy." Therefore, relying on *Cumis* and an interpretation of the requirements of the Hawai'i Rules of Professional Conduct (HRPC) in the event of a conflict of interest, the Finleys assert that HIGA is required to pay for Bernstein's services as "independent counsel." In order to determine whether HIGA was obligated to pay for additional counsel, we must determine the options available to an insured faced with a tender of a defense under a reservation of rights. Specifically, we must determine whether insureds should have the right to reject the attorney selected by the insurer and select their own counsel, whose reasonable fees would be paid by the insurer.

2. **The insured does not have the right to select counsel to represent its interests solely due to an insurer's reservation of rights.**

There is no consensus on this issue nationwide. Reasonable minds can and do differ on the best resolution of the conflict inherent in the tripartite relationship among the insurer, the insured, and insurance defense counsel. The magnitude of the difficulty in resolving the issue is reflected in the volume of litigation nationwide and, in the instant case, the number of *amicus curiae* briefs representing divergent views. Upon balancing the respective pros and cons of suggested solutions to the issue, we are convinced that the best result is to refrain from interfering with the insurer's contractual right to select counsel[9] and leave the resolution of the con-

---

8. We set forth the statute in its entirety in order to illustrate the complexity of issues which arise with the adoption of the *Cumis* counsel requirement.

9. We note that the insurance contract at issue in this case does not specifically state that the insur-

er has the right to select counsel. The contractual language states only that the insurer has the "right and duty to defend at our expense any claim" against the insured and "the right to investigate and settle these claims[.]" The Finleys do not challenge that, under the language of

flict to the integrity of retained defense counsel. Adequate safeguards are in place already to protect the insured in the case of misconduct. If the retained attorney scrupulously follows the mandates of the Hawai'i Rules of Professional Conduct (HRPC), the interests of the insured will be protected. In the event that the attorney violates the HRPC, the insured has recourse to remedies against both the attorney and the insurer.

### a. Under the HRPC, the sole client of the retained attorney is the insured.

■ The notion that the attorney retained by the insurer to represent the insured is barred from the representation due to a conflict of interest rests in part upon an implicit assumption that the attorney is engaging in dual representation, that both the insurer and the insured are clients of the attorney. *See Cumis*, 208 Cal.Rptr. at 498 ("the attorney selected by the insurer [has] a dual agency status.") Whether the attorney has an attorney-client relationship with the insurer is a matter of substantive law and varies by state. *See* ABA Committee on Ethics and Professional Responsibility, Formal Op. 96–403 (hereinafter ABA Opinion), stating that:

> The Model Rules of Professional Conduct offer virtually no guidance as to whether a lawyer retained and paid by an insurer to defend its insured represents the insured, the insurer, or both.... [F]or purposes of determining the lawyer's authority and responsibility, principles of substantive law external to these Rules determine whether a client-lawyer relationship exists.... Absent an express agreement specifying the identity of the lawyer's client or clients, however, a lawyer hired by an insurer to defend its insured may be held to have a client-lawyer relationship with the insured alone or with both the insured and the insurer.

The Finleys impliedly assert in their opening brief that MacLaren and Tom represented both HIGA and the Aaron Defendants as clients. The record on appeal does not contain any information on the specific arrangement between HIGA and counsel retained by HIGA. The rule implied by the HRPC, which we expressly approve herein, is that retained counsel *solely* represents the insured when a conflict arises between the interests of the insurer and the insured.

The portion of the HRPC dealing with conflicts of interests provides that:

> [Rule 1.7(b) ] A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation.
>
> [Comment 10 to Rule 1.7] A lawyer may be paid from a source other than a client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty to the client. For example, when an insurer and its insured have conflicting interests in a matter arising from a liability insurance agreement, and the insurer is required to provide special counsel for the insured, the arrangement should assure the special counsel's professional independence.

The HRPC do not allow an attorney to represent a client if this representation will be materially limited by his responsibilities to another client or a third person. If both the insured and the insurer were clients of the attorney and a conflict existed, such that each desired a different outcome to the litigation, it would be impossible for the attorney to adequately represent the interests of both, and the requirements of HRPC Rule

the contract, HIGA had the right to select MacLaren and Tom. The Aaron Defendants did not contest the appointment of these individuals nor request that HIGA appoint a different attorney. For the purposes of this appeal, therefore, we accept the proposition that the contractual language gave HIGA the right to select counsel. This comports with the general rule. "Because

of their financial stake in effective claims resolution, insurers have a contractual right to control their insureds' defenses.... Insurers can best ensure adequate representation at a reasonable cost by controlling their insureds' defense, and the best way for insurers to control defense is to select their insureds' attorneys." *Eternal Triangle* at 481.

1.7(b)(1) could not be met. Comment 10 expressly allows the representation of an insured by special (i.e.independent) counsel paid for by the insurer, with the caveat that the arrangement must "assure the special counsel's professional independence." Clearly, this does not contemplate dual representation of both the insurer and the insured by a single attorney where a conflict of interest between the two exists.

■ Our holding that the sole client of the attorney is the insured reflects the modern view. *See, e.g., State Farm Fire & Cas. Co. v. Mabry,* 255 Va. 286, 497 S.E.2d 844, 847 (1998) ("The attorney employed by the insurer to defend the insured is bound by the same high standards which govern all attorneys, and owes the insured the same duty as if he were privately retained by the insured.") (Internal quotation marks and citation omitted.) *See also Tripartite Relationship* at 294 ("Defense counsel must treat the insured as the client. Recognizing the insured as the attorney's sole client is consistent with recent judicial decisions."), (Footnote omitted.) We therefore reject the Finleys' implied assertion that retained counsel had two clients, HIGA and the Aaron Defendants.

**b. To satisfy the requirements of the HRPC, the arrangement between the insurer and retained counsel must assure the attorney's professional independence, and the insurer may not interfere with the attorney's professional judgment.**

■ In addition to comment 10 to HRPC Rule 1.7, the following provisions are relevant to the relationship between the insurer, the insured, and the retained attorney:

[Rule 1.2] (a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which the objectives are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter.[10]

(c) A lawyer may limit the objectives of the representation if the client consents after consultation.

[Rule 1.8(f)] A lawyer shall not accept compensation for representing a client from one other than the client unless:

(1) the client consents after consultation;

(2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and

(3) information relating to representation of a client is protected as required by Rule 1.6.

[Rule 5.4(c)] A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.

We believe that an attorney may accept payment for a defense of the insured without compromising his or her duty of loyalty to the client. Having determined that the sole client of the attorney is the insured, an attorney who follows the above-cited requirements of the HRPC must: (1) consult with the client as to the "means by which the objectives [of the representation] are to be pursued"; (2) not allow the insurer to interfere with the attorney's "independence of professional judgment or with the client-lawyer relationship"; and (3) not allow the insurer "to direct or regulate the lawyer's professional judgment in rendering such legal services." *Only* if these requirements are met will the representation of an insured, paid for by an insurer with a conflicting interest in the outcome of the litigation, comport with the mandates of the HRPC.

---

10. We do recognize that, under the insurance contract at issue herein, HIG retained the right to settle claims against the insured. This is not an issue in the instant appeal. HRPC Rule 1.2 allows the limitation of the scope of the representation if the client consents after consultation. Therefore, in order to preserve the insurer's contractual right, the attorney must clearly inform the insured and get consent to this, or any other, limitation on the representation. While the insured will rarely object to a settlement within policy limits, this issue has arisen in several cases. *See generally,* ABA Opinion, addressing the "obligations of a lawyer representing an insured who objects to a proposed settlement within policy limits."

Some courts lack faith in the ability of retained counsel to place the interests of the insured above the attorney's alleged interest in future employment by the insurer. *See, e.g. United States Fidelity & Guar.*, cited *supra*. However, we agree with the following passage:

> To hold that the insurer who, under reservation of rights, participates in selection of counsel, automatically breaches its duty of good faith is to indulge in the conclusive presumption that counsel is unable to fully represent its client, the insured, without consciously or unconsciously compromising the insured's interests. The Court is unable to conclude that Michigan law professes so little confidence in the integrity of the bar of this state.

*Federal Ins. Co. v. X–Rite, Inc.*, 748 F.Supp. 1223, 1229 (W.D.Mich.1990).

We require attorneys to follow the mandates of the HRPC. Assuming that the arrangement between the attorney and the insurer does not violate the HRPC, the retained attorney is sufficiently "independent" that we will not adopt a blanket rule based on the assumption that the attorney will slant his or her representation to the detriment of the insured. Indeed, there is absolutely no allegation in the instant case that MacLaren and Tom's representation of the Aaron Defendants was inadequate or violated their duties under the HRPC.

■ We note that insurers may foreseeably assert a contractual right to "control" the litigation.[11] However, while the insurer may have a contractual right to select defense counsel, the insurer's desire to limit expenses must yield to the attorney's professional judgment and his or her responsibility to provide competent, ethical representation to the insured. "Whatever the rights and duties of the insurer and the insured under the insurance contract, that contract does not define the ethical responsibilities of the law-

yer to his client." ABA Opinion (citing *Rogers v. Robson, Masters, Ryan, Brumund and Belom*, 81 Ill.2d 201, 40 Ill.Dec. 816, 407 N.E.2d 47, 49, *aff'd*, 81 Ill.2d 201, 40 Ill.Dec. 816, 407 N.E.2d 47 (1980)).

When retained counsel, experienced in the handling of insurance defense matters, is allowed full rein to exercise professional judgment, the interests of the insured will be adequately safeguarded. If the insurer or retained counsel fail to meet the professional standards mandated by the HRPC, alternate remedies exist which can be utilized by the insured. *See infra*, section II.A.4. Moreover, we do not rule out the possibility that, during the pendency of the action, an actual conflict of interest could develop that would warrant the withdrawal or dismissal of retained counsel and the appointment of new counsel. However, in the instant case, no such conflict is alleged to have existed.

■ The Finleys assert that, in every case in which the insurer defends under a reservation of rights based on multiple claims within and without the scope of insurance coverage, there is an automatic conflict of interest which bars the attorney's representation of the insured without informed consent pursuant to HRPC Rule 1.7. The ICA accepted this proposition. Although it is incontrovertible that the insurer and the insured have divergent economic interests in the outcome of the litigation, HRPC Rule 1.7 bars the attorney's representation only if this conflict will "materially [limit]" the lawyer's representation of the insured. Because of the safeguards inherent in the HRPC, as well as alternate remedies existing in the case of misconduct, we disagree with the Finleys and with the ICA that HRPC Rule 1.7 bars an attorney retained by the insurer from representing the insured under these circumstances without the informed consent of the insured.

---

11. *See Parker v. Agricultural Ins. Co.*, 109 Misc.2d 678, 440 N.Y.S.2d 964, 967 (N.Y.Sup.1981), noting that:

> Normally, an insurer's duty to defend *is coupled with the right to control the defense* of the litigation.... Giving the insurer exclusive control over litigation against the insured safeguards the orderly and proper disbursement of

> the large sums of money involved in the insurance business. However, in situations where conflict of interest and loyalties are apparent, "[t]he insurer's desire to control the defense must yield to its obligations to defend the insured."

(Citations omitted.) (Emphasis added.)

### 3. The insured's options upon tender of a defense by the insurer under a reservation of rights

Although we acknowledge the contractual right of an insurer to select counsel for the insured in the tender of a defense under a reservation of rights, it is well settled that the insured must have the right to reject this tender. *See Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120 (5th Cir.1983) ("When a reservation of rights is made, however, the insured may properly refuse the tender of defense and pursue his own defense.") This right has previously been recognized by implication in this jurisdiction.

> *Where the insured refuses to enter into an agreement permitting insurer to defend with reservations,* and communicates to the insurer a denial of the latter's right to so defend with reservation ... and thereafter the insurer fails to withdraw and continues to represent the insured in defense of the suit, the law is clear that the insurer has waived its right to withdraw, and will be estopped to later assert such right when sued by the insured for failure to properly defend.

*Yuen Shee v. London Guar. & Accident Co.*, 40 Haw. 213, 232 (1953) (citations omitted) (emphasis added).

■ Moreover, the right to refuse an insurer's tender of a defense under a reservation of rights is mandated by the HRPC. *See* HRPC Rule 1.8(f), stating that "[a] lawyer shall not accept compensation for representing a client from one other than the client unless: (1) the client consents after consultation[.]" The requirement of client consent necessarily implies the right not to consent. Therefore, if the client does not desire the representation under the terms offered by the insurer, the insurer must either choose to defend unqualifiedly or allow the insured to conduct its own defense of the action.

■ If the insured chooses to conduct its own defense, the insured is responsible for all attorneys' fees related thereto. The insurer is still potentially liable for indemnification for a judgment within the scope of insurance coverage. However, having refused the contractual terms of the policy, the insured foregoes its right to compensation for defense fees. A contrary holding would effectively nullify our determination that the insurer, even in a reservation of rights situation, retains the contractual right to select the counsel whom it will pay to defend the insured.

■ In the instant case, there is no showing that the Aaron Defendants asserted a right to select counsel or objected to the appointment of MacLaren and Tom by HIGA. While the Aaron Defendants did retain Bernstein to additionally represent their interests, this did not operate as an exercise of their right to reject the tender of the defense under a reservation of rights. Under our holding, the Aaron Defendants were entitled to a single counsel paid for by the insurer, as provided by the contract. The Aaron Defendants accepted MacLaren and Tom, and, therefore, HIGA fulfilled its contractual obligation to provide a defense by paying the fees for those attorneys' services.

### 4. Alternate remedies in case of actual misconduct and a caution to retained defense attorneys and insurers

■ If the duties prescribed by the HRPC are not followed by retained counsel, various remedies exist to protect the insured. These remedies include: (1) an action against the attorney for professional malpractice; (2) an action against the insurer for bad faith conduct; and (3) estoppel of the insurer to deny indemnification. HIGA argues that these remedies are adequate to deter unethical conduct on the behalf of the insurer and retained counsel. We agree with HIGA on this point.

Attorneys are required to follow the HRPC. Violation of the ethical duties owed to their clients could result in actions for professional malpractice. In determining that counsel chosen by the insurer could not adequately represent the interests of the insured, the Alaska Supreme Court was concerned that

> if the insurer knows that it can later assert non-coverage, or if it thinks that the loss which it is defending will not be covered under the policy, it may only go through

the motions of defending: it may offer only a token defense.... [I]f there are several theories of recovery, at least one of which is not covered under the policy, the insurer might conduct the defense in such a manner as to make the likelihood of a plaintiff's verdict greater under the uninsured theory. [Also,] the insurer might gain access to confidential or privileged information in the process of the defense which it might later use to its advantage in litigation concerning coverage.

*CHI of Alaska, Inc. v. Employers Reinsurance Corp.*, 844 P.2d 1113, 1116 (Alaska 1993) (quotation marks and citations omitted).

▮ In our view, any of the scenarios envisioned by the *CHI of Alaska* court would expose the attorney to malpractice liability. The attorney cannot conduct merely a "token defense" without violating the duty of competent representation mandated by HRPC Rule 1.1. The attorney could not slant the outcome of the case to a theory of liability not covered by insurance without violating the duty of loyalty to his or her client, the insured. Finally, the attorney is precluded from sharing privileged information received in the representation with the insurer. *See* HRPC Rule 1.6. *See also* Tripartite Relationship at 295, opining that "[a]s a general rule, a defense attorney should never share with the insurer confidential information communicated by the insured. If defense counsel learns of information suggesting coverage defenses, such information must be kept confidential. Under no circumstances should appointed counsel attempt to uncover or develop coverage defenses."

▮ In *Best Place, Inc. v. Penn America Ins. Co.*, 82 Hawai'i 120, 132, 920 P.2d 334, 346 (1996), we held that "there is a legal duty, implied in a first-and third-party insurance contract, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action." We are of the view that, where an insurer is required to provide a defense for its insured, it would be a breach of the duty of good faith to induce retained counsel to provide a defense which did not meet the professional standard set forth by the HRPC. The attorney may be liable for professional malpractice, and the insurer may also be liable if its actions caused the attorney's breach of its duties.

In *Tank v. State Farm Fire & Casualty Co.*, 105 Wash.2d 381, 715 P.2d 1133 (1986), the Washington Supreme Court held that, when an insurer defends under a reservation of rights, an "enhanced" standard of good faith is applicable to judicial scrutiny of the insurer's actions. We believe that the *Tank* court's reasoning is persuasive. The court held that:

We have stated that the duty of good faith of an insurer requires fair dealing and equal consideration for the insured's interests. Thus ... the same standard of fair dealing and equal consideration is unquestionably applicable to a reservation-of-rights defense. We find, however, that the potential conflicts of interest between insurer and insured inherent in this type of defense mandate an even higher standard: an insurance company must fulfill an enhanced obligation to its insured as part of its duty of good faith. Failure to satisfy this enhanced obligation may result in liability of the company, or retained defense counsel, or both.

This enhanced obligation is fulfilled by meeting specific criteria. First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the *insured* is the client. Third, the company has the responsibility for fully informing the insured not only of the reservation-of-rights defense itself, but of *all* developments relevant to his policy coverage and the progress of his lawsuit. Information regarding progress of the lawsuit includes disclosure of all settlement offers made by the company.[12] Finally, an insurance company

---

12. In our view, responsibility for this communication is more properly placed upon the attorney, rather than the insurer. *See* HRPC Rule 1.4(a), stating that "[a] lawyer shall keep a client

must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.

715 P.2d at 1137 (emphases in original).

◼ Finally, the insurer's conduct of the defense of the insured may be undertaken in such a manner that the insurer is equitably estopped from denying indemnification based on the result of the claim. *See, e.g., AIG Hawai'i Ins. Co. v. Smith,* 78 Hawai'i 174, 891 P.2d 261, *reconsideration denied,* 78 Hawai'i 421, 895 P.2d 172 (1995). In *Smith,* we held that there are certain circumstances under which the insurer's conduct of a defense of its insured is performed in such a manner as to create serious prejudice to the insured. Therefore, under these circumstances, the insurer is equitably estopped from denying indemnification for the judgment, despite the fact that the ultimate judgment is based on grounds outside the scope of coverage. "[T]he party invoking equitable estoppel must show that 'he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, *and* that such reliance was reasonable.' Such requirement, however, may be dispensed with in order to prevent manifest injustice." *Smith,* 78 Hawai'i at 179, 891 P.2d at 266 (emphasis in original) (citations omitted).

In *Smith,* the insured, Eric Castillo, tendered his defense to the insurer, AIG Hawai'i Insurance Co., after an automobile accident. A complaint was filed naming Castillo as a defendant on August 16, 1988. After being given notice of the complaint, AIG sent Castillo a letter disclaiming coverage for punitive damages and for compensatory damages over the policy limits. AIG did not issue a reservation of rights as to compensatory damages within policy limits. AIG thereafter paid for counsel, who represented Castillo. On January 26, 1989, Castillo's deposition was taken. Then, in March 1989, based on information obtained through Castillo's deposition, AIG withdrew its defense.

In *Smith,* Castillo was prejudiced by AIG's conduct of his defense.

Rather than obtain a reservation of rights or non-waiver of rights, AIG: (1) chose instead to assume unconditional control over Castillo's defense; (2) reaffirmed its intention to provide coverage for compensatory damages within the policy limits; and (3) allowed Castillo's deposition to be taken, potentially exposing him to criminal liability, without the benefit of independent counsel. Moreover, the information obtained by AIG's retained counsel during the discovery process, including information learned from Castillo's deposition, was presumably relayed to AIG and served as the basis for AIG's denying coverage and withdrawing Castillo's defense. AIG's actions effectively deprived Castillo of his right to: (1) obtain private counsel; (2) control his defense ...; (3) explore possible settlement negotiations; and (4) control the manner and handling the lawsuit. AIG's actions further created an apparent conflict of interest due to the insurance company's attorney performing a dual role, that is, maintaining exclusive control of the defense of the claims against the insured while gathering information that could simultaneously be used by the insurer to deny coverage.

*Id.* at 179–180, 891 P.2d at 266–267. Therefore, we held that AIG was equitably estopped from denying coverage to Castillo because of its actions in conducting his defense.

Insurers and retained defense counsel must be aware of these potential liabilities in the conduct of the defense of an insured. We believe that the remedies discussed above are adequate deterrence against misconduct and safeguard the interests of the insured regardless of the fact that the attorney representing the insured is selected by the insurer. Although the availability of these remedies is relevant to our determination that it is unnecessary to adopt the reasoning of *Cumis* and its progeny, we must point out that, in this case, none of them are

reasonably informed about the status of a matter , and promptly comply with reasonable requests

for information."

implicated. The Finleys do not challenge the actions of retained counsel or HIGA in the defense of the Aaron Defendants. The Finleys base their claim instead on an assertion that a conflict of interest automatically arose that rendered the actions of retained counsel untrustworthy. The record is devoid of any concrete claim regarding misconduct in the underlying action.

## B. HIGA's cross-appeal

Because of its disposition of the case, the ICA vacated the circuit court's award of attorneys' fees and costs. HIGA filed a cross-appeal on the issue of the circuit court's reduction of its request for fees and costs. Because we are reinstating the circuit court's judgment in favor of HIGA, we must therefore address the issues raised in the cross-appeal.

HIGA prevailed in this action. HIGA subsequently requested attorneys' fees and costs. HIGA sought $35,292.50 in fees and costs. HIGA states that it was entitled to $24,079.22 in fees and $2,911.55 in costs. As noted in footnote 5, *supra*, HIGA does not explain the discrepancy between the amount it now claims entitlement to and the amount in its original request.[13] The Finleys filed a memorandum in opposition to HIGA's request arguing, *inter alia*, that HIGA was not entitled to attorneys' fees on count V, breach of settlement agreement, because that count was resolved in favor of the Finleys through HIGA's payment of $100,000. The circuit court entered an order stating that "[t]he Court finds reasonable attorneys' fees to be $11,764.00 and taxable costs to be $264.00 for a total of $12,028.00." HIGA claims that the circuit court abused its discretion by reducing the amount of fees and costs requested to that awarded.

 We agree that the circuit court abused its discretion in reducing the amount of taxable costs awarded without explanation or a readily discernable rationale. *See Wong v. Takeuchi*, 88 Hawai'i 46, 961 P.2d 611 (1998) (holding that the circuit court abused its discretion in reducing, without explana-

tion, prevailing party's request for costs). Therefore, we vacate this portion of the circuit court's order and remand for recalculation. We now turn to the issue of attorneys' fees.

HIGA requested attorneys' fees under the theory that this action is in the nature of assumpsit, and this is not challenged by the Finleys. Pursuant to HRS § 607–14 (Supp. 1997), "[i]n all the courts, in all actions in the nature of assumpsit ... there shall be taxed as attorneys' fees, to be paid by the losing party ... *a fee that the court determines to be reasonable* [.]" "We review the [circuit] court's denial [and granting] of attorneys' fees under the abuse of discretion standard." *Weinberg v. Mauch*, 78 Hawai'i 40, 52–53, 890 P.2d 277, 289–90, *reconsideration denied*, 78 Hawai'i 421, 895 P.2d 172 (1995) (brackets in original) (internal quotation signals and citation omitted).

HIGA's sole ground for challenging the circuit court's award of fees is that the severe reduction in the amount of fees was excessive and that the circuit court should have been required to explain the grounds for the reduction. We disagree. An award of attorneys' fees is in derogation of common law principles that parties should be responsible for bearing their own fees incurred in litigation. "Normally, pursuant to the 'American Rule,' each party is responsible for paying his or her own litigation expenses." *Fought & Co., Inc. v. Steel Engineering and Erection, Inc.*, 87 Hawai'i 37, 51, 951 P.2d 487, 501 (1998).

There is a statutory entitlement, pursuant to HRS § 607–14, to an award of *reasonable* attorneys' fees. This does not equate to an entitlement to an automatic award of all attorneys' fees expended by a party in litigation. Contrarily, "when costs are awardable to a prevailing party under HRCP Rule 54(d) and a particular taxable cost is allowed by statute or precedent, then actual disbursements for this purpose are presumptively reasonable." *Wong*, 88 Hawai'i at 53–54, 961 P.2d at 618–19.

---

13. HIGA submitted detailed billing statements; however these statements do not contain a sum-

mation of the fees requested.

We perceive a rational basis for differentiation between appellate review of a circuit court's award of taxable costs and attorneys' fees. The reasonableness of an expenditure of attorneys' fees is a matter within the discretion of the circuit court. Moreover, a request for attorneys' fees is generally far more complex than a request for costs, which may be easily proven by actual receipts for expenditures. Coupled with the fact that an award of "actual disbursements" of taxable costs is specifically referenced by statute, see HRS § 607-9 (1993), we decline to extend the holding of *Wong* to an award of attorneys' fees under HRS § 607-14.

A detailed explanation of the rationale underlying the reduction in attorneys' fees awarded is not necessary. The circuit court specifically found that $11,764.00 was a reasonable amount of fees for the action. The circuit court had access to HIGA's complete, detailed billing statements. The Finleys' contention that HIGA was not entitled to attorneys' fees for Count V, breach of settlement agreement, is meritorious. HIGA was not the "prevailing party" on Count V, which was rendered moot by the payment by HIGA of $100,000 pursuant to the settlement agreement. Because the billing statements submitted by HIGA apparently requested work on this claim, the circuit court had sufficient justification for reducing the award from the amount of fees requested by HIGA. The reduction of the fees requested, therefore, is supported by the record. The mere fact that the circuit court reduced the fees without explanation is insufficient for us to hold that the circuit court abused its discretion. Therefore, we affirm the award of attorneys' fees.

### III. CONCLUSION

For the foregoing reasons, we (1) reverse the opinion of the ICA and order the opinion depublished; (2) affirm the circuit court's grant of summary judgment in favor of HIGA on counts V, VI and VII of the Finleys' complaint; (3) affirm the circuit court's award of attorneys' fees; and (4) vacate the circuit court's award of costs and remand for recalculation of the taxable costs owing to HIGA.