**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1847**

FLEXI-VAN LEASING, INC.,

      Plaintiff – Appellant,

  v.

THE TRAVELERS INDEMNITY COMPANY,

      Defendant – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Charleston. David. C. Norton, District Judge. (2:15-cv-01787-DCN)

Argued: October 23, 2020                      Decided: November 23, 2020

Before THACKER and QUATTLEBAUM, Circuit Judges, and Stephanie A. GALLAGHER, United States District Judge for the District of Maryland, sitting by designation.

Affirmed by unpublished opinion. Judge Quattlebaum wrote the opinion, in which Judge Thacker and Judge Gallagher joined.

**ARGUED:** Edward Kriegsmann Pritchard, III, PRITCHARD LAW GROUP, LLC, Charleston, South Carolina, for Appellant. William Pearce Davis, I, BAKER, RAVENEL & BENDER, L.L.P., Columbia, South Carolina, for Appellee. **ON BRIEF:** Mariel D. Norton, BAKER, RAVENEL & BENDER, L.L.P., Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

This appeal presents conflict of laws and conflict of interests questions in an insurance coverage dispute.[1] The dispute arose from a tort action involving a mechanic named Charles Vititoe, who was injured while working on the rim assembly of a semi-trailer chassis[2] in Charleston, South Carolina (the "Underlying Action"). J.A. 32–37, 882. Flexi-Van Leasing, Inc. ("Flexi-Van") owned the chassis to which the rim assembly was attached (the "Chassis"). J.A. 882. Through a series of leases, the Chassis became part of the South Atlantic Consolidated Chassis Pool (the "Pool"), J.A. 612, which stored chassis in hubs located in the Southeastern United States and leased them to Pool members on a short-term basis. J.A. 346–47, 350–51.

In addition to supplying chassis to the Pool, Flexi-Van served as the Pool's manager. J.A. 883. Flexi-Van, as manager, entered into a Master Maintenance and Repair Agreement (the "Agreement") with Interstar North America, Inc. ("Interstar"), which required Interstar to maintain and repair chassis in the Pool. J.A. 883. Under the Agreement, Interstar agreed

---

[1] We apologize in advance for the excitement generated by our framing of the issues presented here.

[2] The term "chassis" may evoke an image of the underlying frame of a motor vehicle, but the term as it is used here refers instead to a component part of what is commonly known as an "eighteen-wheeler." While oversimplified, an eighteen-wheeler is composed of two basic parts: the truck and the trailer. The truck component contains, among other essential things, the engine, cab and fuel tank. The trailer component, also called the chassis, comprises the vast length of the eighteen-wheeler and can be fashioned with various mechanisms to enable freight transport. Critical to the eighteen-wheeler's name and mobility, the chassis must have numerous tires, which are then secured by rim assemblies.

3

to indemnify, defend and hold harmless both the Pool and Flexi-Van from lawsuits arising from Interstar's negligence. J.A. 883. The Agreement also required Interstar to name both the Pool and Flexi-Van as additional insureds on its insurance policy. J.A. 883. To satisfy this requirement, Interstar added both the Pool and Flexi-Van as additional insureds on its existing commercial insurance policy (the "Policy") with Travelers Indemnity Company ("Travelers"). J.A. 48, 284, 883.

While the Chassis moved among different hubs and was leased to different Pool members, at relevant times, the Pool stored the Chassis at its hub in Charleston, South Carolina. J.A. 346–47, 350–51, 612. Interstar hired Vititoe to replace the right rear tire on the Chassis. J.A. 35. But while Vititoe was replacing the tire, the rim assembly exploded and injured him. J.A. 37, 882. Vititoe sued Flexi-Van for its role in causing his injuries. J.A. 32. Under the Agreement, Flexi-Van tendered the defense of the Underlying Action to Travelers. J.A. 314–16, 883. In a letter to Flexi-Van, Travelers noted it was "not in a position to determine whether or not there might be any coverage in this matter and if there is any obligation under the policy," and it "[did] not waive any rights or defenses that might be available." J.A. 317–18. Travelers nonetheless provided Flexi-Van with an attorney, Mark Wall, during its investigation. J.A. 317.

Later, Travelers sent Flexi-Van a reservation of rights letter (the "Reservation of Rights Letter"), indicating Travelers would not defend or indemnify Flexi-Van for any issues arising outside of Travelers' coverage. J.A. 321–25, 883. Travelers stated that it had "no responsibility to cover injuries or damages due to the independent acts or omissions of

4

Flexi-Van[,]" and that the Policy's Aircraft, Auto or Watercraft exclusion may apply. J.A. 324.

Flexi-Van became concerned that there was a "real possibility that Flexi would not be covered under the Policy if a judgment was rendered against it in the Underlying Action." J.A. 354. Thus, Flexi-Van requested Wall bring a third-party complaint against Interstar. J.A. 328, 379. Wall informed Flexi-Van he was willing to do so, but Flexi-Van would have to pay him to bring the third-party complaint, as Travelers would not. J.A. 334. As a result, Flexi-Van then claimed that Wall had a conflict of interest and could no longer protect Flexi-Van's interests. J.A. 883. After Flexi-Van terminated Wall's representation, it hired substitute counsel. J.A. 884. When Travelers sent Flexi-Van a letter saying it would not pay for substitute counsel, Flexi-Van brought the current suit against Travelers. J.A. 884.[3]

In its suit against Travelers, Flexi-Van asserted three causes of action: (1) declaratory judgment that it is entitled to a defense and indemnity from Travelers for the claims in the Underlying Action; (2) breach of the Policy for failing to defend and indemnify; and (3) breach of the implied obligation of good faith and fair dealing. J.A. 884.

---

[3] Flexi-Van, through its new counsel, filed a third-party complaint against Interstar in the Underlying Action, alleging claims including breach of contract for failure to defend and indemnify. J.A. 884. In response, Interstar filed a third-party counterclaim, alleging that Flexi-Van breached the Agreement by terminating Wall's representation. J.A. 884. All claims in the Underlying Action, except those third-party claims between Flexi-Van and Interstar, were settled. J.A. 312–13. As to the remaining claims, a jury ruled against Flexi-Van on its breach of contract, contractual indemnity claims, negligent hiring and negligent supervision claims. J.A. 884. The jury returned a verdict for Interstar on its breach of contract counterclaim. J.A. 884–85.

All of these claims arose from Flexi-Van's assertion that Wall had a conflict of interest based on his failure to bring a third-party complaint, entitling Flexi-Van to terminate Wall and hire its own counsel at Travelers' expense.

As the result of multiple motions for summary judgment, the district court issued a series of orders. J.A. 885. First, with regard to which state's law applied, the court found that it was South Carolina's. J.A. 627. In reaching this decision, the court relied on paragraph four of Flexi-Van's Complaint. That paragraph provides:

> This case involves a policy of insurance issued by Travelers, which insures interests in South Carolina. The law of South Carolina applies to the interpretation of this policy in accord with S.C. Code § 38-61-10.

J.A. 20. The court found that based on paragraph four, Flexi-Van judicially admitted that South Carolina law applies. J.A. 623–627.

The district court also granted Travelers' Motion for Summary Judgment as to Flexi-Van's breach of the implied obligation of good faith and fair dealing claim. J.A. 633. Lastly, the court concluded that "Flexi-Van acted prematurely by firing Wall before the interests diverged and an actual conflict arose." J.A. 890. Thus, it granted summary judgment to Travelers on Flexi-Van's remaining two causes of action.[4] J.A. 897. Flexi-Van timely appealed, and we have jurisdiction over the appeal. 28 U.S.C. § 1291.

---

[4] The district court in its initial order stated that a genuine issue of material fact existed as to whether Wall had a conflict of interest. J.A. 633. But, in a subsequent order the district court concluded that summary judgment for Travelers was proper. J.A. 895–97. It explained "[u]pon further review, the court has determined that the potential divergence of interests that it previously discussed does not create a genuine issue of material fact. Insurers generally have both the right and the duty to defend their insured. During the representation of an insured, it is the ethical duty of counsel to conduct a conflicts analysis

6

I.

Summary judgment requires the movant show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review de novo a district court's decision to grant summary judgment, applying the same legal standards as the district court and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020) (citing *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)).

A.

Flexi-Van first challenges the district court's determination that the statements in paragraph four of the Complaint constitute a judicial admission. According to Flexi-Van, those statements were matters of law, which cannot be judicially admitted.

To be sure, the doctrine of judicial admission is largely concerned with matters of fact. *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963). "A judicial admission is usually treated as absolutely binding, but such admissions go to matters of fact which, otherwise, would require evidentiary proof." *Id*. Judicial admissions are not,

---

and withdraw as counsel if a conflict exists when representing the rights of the insured while being paid by the insurer." J.A. 888–89. Because the court's earlier order merely "hypothesized about the potential for a conflict to arise," and did not consider whether an actual conflict existed at the time of Wall's termination, its prior analysis was purely hypothetical. J.A. 890 (emphasis removed). Additionally, after the jury rendered a verdict against Flexi-Van on its indemnity claims against Interstar in the Underlying Action, Travelers claimed it was entitled to summary judgment as to Flexi-Van's claims against it under the theory of collateral estoppel. J.A. 886–87. The district court disagreed primarily because the Agreement and the Policy were separate contracts. J.A. 886–87.

7

however, limited to affirmative statements of fact, but also can include "intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law." *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264–67 (4th Cir. 2004) (finding the doctrine of judicial admission precluded a defendant from later refuting its status as an ERISA fiduciary after the district court had previously granted summary judgment as to all state law claims based on the defendant's concession that ERISA applied).

Here, the district court properly found that South Carolina law governed based on Flexi-Van's admission in its Complaint that the Policy insures interests in South Carolina. While Flexi-Van is correct that paragraph four of its Complaint, in its entirety, is more than a mere factual assertion, it contains two discrete parts. The first sentence is a factual assertion that the Policy insures interests in South Carolina. J.A. 20. As correctly stated by the district court, because "the Policy does not specify the location of the interest it insures . . . the scope of 'coverage territory' is an issue of fact that determines whether § 38-61-10 applies . . . ." J.A. 625. This statement in paragraph four thus conceded a factual point with legal significance that Flexi-Van now attempts to walk back. Nevertheless, parties may admit facts that determine legal issues. *See Meyer*, 372 F.3d at 265. Flexi-Van has done just that.

The second sentence of paragraph four states, "[t]he law of South Carolina applies to the interpretation of this policy in accord with S.C. Code Ann. § 38-61-10." J.A. 20. Certainly, whether or not S.C. Code Ann. § 38-61-10 applies may be a legal determination. By making this statement, however, Flexi-Van expressly acknowledged the legal

8

implication of its preceding factual statement. This sentence supports the district court's determination that the factual statement was made intentionally and unambiguously. In sum, the district court properly treated Flexi-Van's statement in its Complaint as a judicial admission, resulting in application of South Carolina law.

A judicial admission, however, is not necessarily the final word. "[A] court, unquestionably, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission." *New Amsterdam*, 323 F.2d at 24. Flexi-Van insists that paragraph four is clearly untrue because the Chassis is a movable item not sufficiently connected to South Carolina. We disagree.

Even without Flexi-Van's judicial admission, it appears that South Carolina law applies. The South Carolina General Assembly has codified the state's conflict of laws approach to insurance contracts:

> *All contracts of insurance on property*, lives, or interests in this State *are considered to be made in the State* and all contracts of insurance the applications for which are taken within the State are considered to have been made within this State and are subject to the laws of this State.

S.C. Code. Ann. § 38-61-10 (2015) (emphasis added). Further, the South Carolina Supreme Court has stated that in determining the applicability of S.C. Code. Ann. § 38-61-10, "[w]hat is solely relevant is where the property, lives, or interests insured are located." *Sangamo Weston, Inc., v. Nat'l Sur. Corp.*, 414 S.E.2d 127, 130 (S.C. 1992). Here, the district court identified the interest as "defense and indemnification for suits seeking bodily injury damages . . . ." J.A. 627. Flexi-Van's suit against Travelers was based, at least in

9

part, on Flexi-Van's role as manager of the Pool's South Carolina location and Interstar's provision of maintenance and repair services at that location and roadside in South Carolina. Given these connections to South Carolina, the district court did not err in declining to relieve Flexi-Van of its admission and finding there was no genuine dispute of material fact as to whether South Carolina law applied.

## B.

Flexi-Van next challenges the district court's determination that there was no conflict of interest. Flexi-Van claims there was a conflict for two reasons.

First, it argues the Travelers' Reservation of Rights Letter created a conflict. As this Court has previously noted, there is no South Carolina law directly addressing this issue. *Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 367 (4th Cir. 2005). In *Twin City*, however, we affirmed a district court's prediction that South Carolina courts would find "a reservation of rights letter contesting coverage of certain claims but not other claims does not automatically trigger a conflict of interest . . . ." *Id.* We explained:

> We are equally unable to conclude that the Supreme Court of South Carolina would profess so little confidence in the integrity of the members of the South Carolina bar. Rigorous ethical standards govern South Carolina attorneys. Rule 1.8(f) of the South Carolina Rules of Professional Conduct mandates that a lawyer cannot accept compensation for representing a client from a third party unless certain conditions are met, including that the lawyer's judgment must remain independent.

10

*Id.* at 373. Based on that, we held that if an insured refuses to consent to an insurer's choice of counsel without a conflict, "'the insured foregoes its right to compensation for defense fees.'" *Id.* at 374 (quoting *Finley v. Home Ins. Co.*, 975 P.2d 1145, 1155 (Haw. 1998)).

While not a per se conflict, a reservation of rights letter may still establish an actual conflict where the parties lack a "common interest." *Id.* at 374. As the district court found, however, at the time of the issuance of the Reservation of Rights Letter, "Flexi-Van and Travelers had a common interest in proving that Vititoe was at fault in the [U]nderlying [A]ction . . . ." J.A. 888. Flexi-Van has not identified any genuine issue of material fact on this point. Given that common interest, the district court properly found the Reservation of Rights Letter did not create a conflict of interest. Accordingly, Flexi-Van's termination of Wall was premature.

Second, Flexi-Van argues a conflict of interest existed based on Wall's alleged failure to bring a third-party complaint against Interstar. But the record shows that Wall did not refuse to bring a third-party complaint against Interstar. In fact, he expressly stated he would. Wall merely insisted Flexi-Van pay him to do so, as Travelers would not because it believed it had no duty to pay for Flexi-Van's third-party claim under the Policy and South Carolina law. As stated by Wall to Flexi-Van's subsequently-hired counsel:

> I need to correct one important misstatement: pursuant to my duty to both clients, Flexi-van and Travelers, I am taking my instructions from both. Flexi-van told me they wanted to bring a 3rd Party against Interstar. I told them that I would be happy to and will, but Travelers will not pay me for doing so. Thus Flexi-van and I had to reach some agreement as to payment of fees and expenses as to the 3rd Party Action.

J.A. 334.

11

The district court rightly found "the refusal to initiate a third-party action against Interstar arose from Travelers's refusal to pay Wall to file a third-party action, not from any independent decision-making on the part of Wall." J.A. 893. In fact, "[f]inding a conflict of interest in this scenario would destroy the ability of an insurer to hire counsel to defend its insured solely within the scope of an insurance policy." J.A. 894. The existence of a coverage issue alone does not give rise to an actual conflict.

Thus, the facts, even when construed in the light most favorable to Flexi-Van, do not create a genuine issue of material fact as to whether Wall's actions created an actual conflict. Similarly, because Flexi-Van fired Wall before an actual conflict arose, thereafter settling with its substitute counsel, Flexi-Van is not entitled to indemnification for settlement costs in the Underlying Action.[5] Accordingly, the district court's grant of summary judgment to Travelers was proper.

C.

Finally, Flexi-Van challenges the district court's order granting Travelers' Motion for Summary Judgment on Flexi-Van's claim alleging breach of the implied obligation of good faith and fair dealing. Flexi-Van's bad-faith claim relates to the Policy's Aircraft, Auto or Watercraft exclusion. It claims the exclusion is inconsistent with the Agreement between Flexi-Van and Interstar and thus should be removed. The district court disagreed,

---

[5] Indemnification was not required where "defendants ousted the insurance companies from the [underlying cases], refused to cooperate with the companies throughout the litigation, and negotiated and paid a settlement without the insurance companies' consent." *Twin City*, 433 F.3d at 376.

12

finding that Travelers' Reservation of Rights Letter "was reasonable as a matter of law and did not create an actual conflict per se and Flexi-Van provides no further facts or evidence of unreasonable conduct on Travelers's part." J.A. 633. "'If there is a reasonable ground for contesting a claim, there is no bad faith.'" *Snyder v. State Farm Mut. Auto. Ins. Co.,* 586 F. Supp. 2d 453, 458 (D.S.C. 2008) (quoting *Crossley v. State Farm Mut. Auto. Ins. Co.,* 415 S.E.2d 393, 397 (S.C. 1992)). Importantly, Travelers was not a party to the Agreement. In fact, it issued the Policy prior to the execution of the Agreement. Under this record, there is no genuine issue of material fact. Travelers had reasonable grounds for believing coverage might not be a certainty under the exclusion, and Flexi-Van failed to submit any additional evidence that Travelers' Reservation of Rights Letter was unreasonable. Thus, the district court did not err in granting summary judgment for Travelers as to Flexi-Van's claim for breach of the implied obligation of good faith and fair dealing.

## II.

For the reasons stated above, the district court's judgment is

*AFFIRMED*.

13