131 P.3d 500

**DFS GROUP L.P., a Delaware limited partnership, dba Hawaiian King Candies, Plaintiff–Appellee**

v.

**PAIEA PROPERTIES, a Hawai'i limited partnership, Defendant–Appellant.**

No. 25662.

Supreme Court of Hawai'i.

April 3, 2006.

Paul Alston and Peter Knapman of Alston Hunt Floyd & Ing, for plaintiff-appellee, on the request for fees.

William C. McCorriston, David J. Minkin, and Becky T. Chestnut of McCorriston Miller Mukai MacKinnon, LLP, for defendant-appellant, in opposition.

MOON, C.J., LEVINSON, NAKAYAMA, and ACOBA, JJ. and Circuit Judge POLLACK, assigned by Reason of Vacancy.

Opinion of the Court by NAKAYAMA, J.

Plaintiff-appellee DFS Group L.P., dba Hawaiian King Candies [hereinafter "DFS"], requests that this court award attorneys' fees in the amount of $133,555.88 and excise taxes in the amount of $5,565.28, for a total of $139,121.16, as reasonably and necessarily incurred on appeal.[1] For the following reasons, we grant in part and deny in part DFS' request for attorneys' fees. Furthermore, based upon the circumstances of this case, the matter is referred to the Office of Disciplinary Counsel [hereinafter "ODC"] for an investigation as to whether the Hawai'i Rules of Professional Conduct [hereinafter "HRPC"] were violated.

## I. BACKGROUND

The underlying appeal is the result of a dispute as to the terms of a November 18, 1996 commercial lease of warehouse space [hereinafter "the lease"] executed by Paiea Properties [hereinafter "Paiea"], as lessor, and DFS, as lessee.

Pursuant to Exhibit E, section 1(a) of the lease, DFS retained an option to renew the lease for one additional five-year term. In order to determine the "prevailing rent" for the five-year period, the lease incorporated an appraisal procedure authorizing the appointment of a certified appraiser to select either DFS' or Paiea's determination of the "prevailing rent," based upon whichever determination was closer to the appraiser's independent conclusion. The lease specifically provided that "[t]he appraiser's decision shall be final, conclusive and binding on Landlord and Tenant."

In a letter dated February 25, 2002, DFS purported to exercise its option under the lease and proposed the selection of Robert C. Hastings [hereinafter "Hastings"] as the appraiser responsible for determining the "prevailing rent." Paiea ultimately agreed to DFS' selection of Hastings. Thereafter, in a June 25, 2002 appraisal report, Hastings concluded that DFS' offer was closest to the market rent for the subject property.

In a June 30, 2002 letter addressed to DFS and Hastings, Paiea rejected the appraisal report stating that it was not prepared in a manner consistent with the terms of the lease. Paiea specifically contended that Hastings' determination improperly included a reduction that accommodated DFS for the costs incurred in constructing permanent improvements. Paiea asserted that, pursuant to the terms of the lease, permanent improvements are owned by and for the benefit of Paiea, and therefore Hastings should not have deducted such costs from his calculation of the market rent. DFS and Hastings did not respond to Paiea's letter. Instead, on August 23, 2002, DFS filed a "Complaint for Declaratory Relief or in the Alternative for Confirmation of Arbitration Award and Entry of Final Judgment"[2] in the first circuit court. Paiea filed its answer on September 24, 2002.

On October 18, 2002, DFS filed a motion for summary judgment, requesting that the

---

1. Although DFS originally sought $141,761.79 in fees and $5,670.91 in excise taxes, DFS conceded a reduction of 7.8 hours in its reply memorandum. Accordingly, $2,535.00 should be deducted from the amount of fees requested and the requested taxes should be reduced by $105.63.

2. The circuit court construed the appraisal procedure as an arbitration.

court confirm Hastings' appraisal report. DFS argued that there was no genuine issue of material fact inasmuch as: (1) Paiea unconditionally agreed to the selection of Hastings; (2) Paiea had a procedural mechanism available if it disputed the selection of the appraiser, and Paiea failed to make use of such mechanism; (3) Paiea unconditionally agreed, pursuant to the terms of the lease, that the appraiser's conclusion would be "final, conclusive, and binding" on the parties; and (4) Paiea only accused Hastings of being impartial, biased and corrupt after Hastings' appraisal report produced an adverse result. Paiea filed a memorandum in opposition on November 6, 2002. Subsequently, on January 27, 2003, the circuit court, the Honorable Eden Elizabeth Hifo presiding, granted DFS' motion for summary judgment.

Paiea thereafter filed a timely notice of appeal on February 28, 2003. On appeal, Paiea argued that: (1) the circuit court erred by confirming the appraisal report inasmuch as it lacked the degree of certainty and definiteness required by law, such that the decision could lead to future litigation; (2) the circuit court erred by confirming the appraisal report because Hastings exceeded the authority conferred upon him by the terms of the lease; and (3) the circuit court erred in confirming the appraisal report in light of Hastings' evident bias and partiality. DFS filed its answering brief on August 12, 2003. On April 19, 2005, this court filed a summary disposition order stating that: (1) Paiea is not entitled to a vacation of the appraisal report inasmuch as Paiea neither moved the circuit court to vacate the report nor provided notice to DFS of its intent to vacate the report pursuant to Hawaii Revised Statutes [hereinafter "HRS"] § 658–11 (1993), *repealed by* 2001 Haw. Sess. L. Act 265, §§ 5, 8 at 811–813; (2) the appraisal report did not lack the degree of certainty and definiteness required by law inasmuch as the report clearly and definitely proposed a "prevailing rent" of $0.90 per square foot per month; and (3) the appraisal report required no clarification.

On May 16, 2005, DFS filed the present request for attorneys' fees incurred in connection with the underlying appeal.

## II. DISCUSSION

### A. The Lease Agreement Provides Authority for the Recovery of DFS' Attorneys' Fees Incurred on Appeal.

■ In *TSA International, Ltd. v. Shimizu Corp.*, 92 Hawai'i 243, 263, 990 P.2d 713, 733 (1999) (citations omitted) (emphasis added), we set forth the following general principles related to the recovery of attorneys' fees:

> Generally, under the 'American Rule,' each party is responsible for paying his or her own litigation expenses. A notable exception to the 'American Rule,' however, is the rule that attorneys' fees may be awarded to the prevailing party where such an award is provided for by *statute*, stipulation, or agreement.

In the present case, the statutory exception to the "American Rule" is HRS § 607–14 (Supp.1997) (emphasis added),[3] which provides that:

> [i]n all courts, in all actions in the nature of assumpsit and in all actions on a promissory note *or other contract in writing* that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable.

Therefore, inasmuch as the lease constitutes a "contract in writing that provides for an attorney's fee," the determinative issue is whether the language of the lease authorizes the recovery of attorneys' fees in the present case. We conclude that it does.

> The lease provides, in relevant part, that: [i]n the event of any action or proceeding brought by either party against the other based upon or arising out of any breach of the terms and conditions [thereof], the prevailing party shall be entitled to recover all reasonable costs, including reasonable attorneys' fees, from the other.

---

**3.** HRS § 607–14 was subsequently amended in 2004, however the amendment does not have any substantive impact on the present analysis. *See* HRS § 607–14 (Supp.2004).

Invoking the foregoing provision, DFS asserts that it is entitled to recover attorneys' fees inasmuch as: (1) the lease provided specific procedures for an arbitration proceeding to resolve disputes over the determination of the "prevailing rent"; (2) Paiea refused to abide by the arbitrator's award; and (3) this court affirmed the circuit court's order granting summary judgment in favor of DFS on all claims, thereby establishing DFS as the prevailing party.

To the contrary, Paiea contends that the language of the lease authorizes the recovery of attorneys' fees only in actions brought for a breach of contract. Paiea thus appears to argue that because the complaint did not delineate a specific breach of contract cause of action, the clause authorizing the recovery of attorneys' fees was not triggered.

However, Paiea's interpretation construes the language of the lease too narrowly. The plain language of the lease authorizes the recovery of attorneys' fees by the prevailing party in "*any* action or proceeding" so long as the claim is "based upon or arising out of any breach of the terms and conditions [of the lease]." (Emphasis added.) In the present case, DFS alleged that the genesis of the dispute was Paiea's rejection of Hastings' determination of the "prevailing rent," despite Exhibit E, section (1)(f), in the lease, which states that "[t]he appraiser's decision shall be final, conclusive, and binding." Accordingly, the present action is clearly based upon or arising out of a breach of the terms and conditions of the lease,[4] and DFS is authorized to recover reasonable attorneys' fees incurred in the underlying appeal, pursuant to section 19.06 of the lease.

### B. DFS' Recovery of Attorneys' Fees is Not Limited to Twenty–Five Per Cent of the Judgment.

◾ As previously mentioned, HRS § 607–14 authorizes an award of costs and

fees "[i]n all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee." However, HRS § 607–14 also provides that an award of costs and fees "shall not exceed twenty-five per cent of the judgment."

DFS acknowledges the foregoing statutory limitation, but contends that the limitation is inapplicable where, as here, the party requesting fees did not seek a monetary judgment in the underlying appeal. DFS also contends, in the alternative, that even if the statutory limitation applies, such limitation does not preclude it from recovering the full $139,121.16 requested. DFS contends that the monetary sum attributable to the judgment is approximately $777,000.00 inasmuch as: (1) DFS offered an annual rent of $437,335.00; (2) Paiea demanded an annual rent of $592,768.00; (3) the difference was $155,413.00 per year; and (4) the rental term was for five years. Thus, applying the twenty-five per cent cap to the sum of $777,000.00, DFS asserts that the applicable limit is $194,266.25, which exceeds the amount of fees requested.

Paiea, on the other hand, argues that the statutory limitation clearly applies, and subsequently disputes DFS' calculation of the twenty-five per cent cap. Paiea argues that DFS made representations to the circuit court that the rent due in years two through five were still subject to negotiation, and that the arbitration agreement addressed only the first year of the lease. Paiea asserts that the circuit court relied on DFS' representations when it granted DFS' motion for summary judgment, and that therefore DFS should be judicially estopped from arguing otherwise in its present request for fees. Therefore, using DFS' own calculations, Paiea asserts that the difference was $155,413.00, and that any award of attorneys' fees is limited to twenty-five per cent of that sum, or $38,853.25.

---

**4.** We have previously referred to Black's Law Dictionary for a clarification of the term "breach of contract." In *Aickin v. Ocean View Invs. Co.*, 84 Hawai'i 447, 457 n. 16, 935 P.2d 992, 1002 n. 16 (1997), we noted that *Black's Law Dictionary* 188, 417 (6th ed.1990) defines the term "breach of contract" as a "[f]ailure, without legal excuse to perform any promise which forms the whole

or part of a contract." Accordingly, inasmuch as we have already affirmed the circuit court's order granting summary judgment in favor of DFS, we have already determined that Paiea had no legal excuse for refusing to abide by Hasting's determination of the "prevailing rent," and therefore Paiea breached the terms and conditions of the lease.

Based upon the following, we agree with DFS' initial contention that the statutory limitation set forth in HRS § 607–14 does not apply in the present case, and we therefore need not address DFS' and Paiea's contentions as to the appropriate method of calculating the twenty-five per cent cap.

Although the language of HRS § 607–14 appears to unequivocally limit an award of attorneys' fees to twenty-five per cent of the judgment, we have previously concluded that the twenty-five per cent limit does not apply in cases that involve "only an adjudication of rights in which no monetary liability is in issue." *Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc.*, 58 Haw. 606, 621, 575 P.2d 869, 880 (1978). Furthermore, in *Piedvache v. Knabusch*, 88 Hawai'i 115, 119, 962 P.2d 374, 378 (1998) (emphasis added), we recognized that "where it is impossible to determine what the judgment would or might have been . . . (*e.g.,* in declaratory judgment actions* ), the [prevailing party] may be awarded all of his or her reasonable attorney's fees." *See also Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 132–133, 839 P.2d 10, 34–35 (1992) ("[I]f no money damages are sought or awarded, *as in a complaint for declaratory judgment,* there is no monetary amount on the basis of which to calculate the twenty-five percent statutory ceiling for attorneys' fees") (emphasis added). In the present case, DFS sought either a declaratory judgment that Hastings' determination of the "prevailing rent" was binding on the parties, or a confirmation of Hasting's determination as an arbitration award. Consequently, the underlying appeal involved an adjudication of rights in which no monetary liability was in issue, and thus, in accordance with the foregoing precedent, we conclude that the twenty-five per cent limitation is inapplicable in the case at bar.[5]

## C. DFS is Entitled to $23,515.70 in Attorneys' Fees.

■ Having established that DFS is entitled to its reasonable and necessary attorneys' fees and that such an award of attorneys' fees is not limited to twenty-five per cent of the judgment, we now consider which attorneys' fees were shown to have been reasonably and necessarily incurred.

As previously mentioned, DFS requests an award of attorneys' fees in the amount of $133,555.88, in addition to excise taxes in the amount of $5,565.28, for a total of $139,121.16. For support, DFS attached an invoice from Stubenberg & Durrett, Attorneys at Law [hereinafter "the Stubenberg firm"] describing each charge, as well as a declaration by Attorney Stubenberg stating, *inter alia,* that: (1) the attorneys' fees actually and reasonably incurred in connection with the Stubenberg firm's appellate representation of DFS amounted to $132,232.50; (2) DFS incurred computer-assisted research charges in the amount of $3,858.38; and (3) the hourly rates attributed to Attorney Stubenberg, Attorney Zahaby, and Attorney Lam were $325.00 per hour, $125.00 per hour, and $185.00 per hour respectively.

Paiea, on the other hand, contends that the fees charged by the Stubenberg firm were excessive and unreasonable, citing the following charges as examples: (1) $33,112.50 (135.3 billed hours) spent on a motion to dismiss the appeal; (2) 325.4 billed hours for a sixteen-page answering brief; (3) 3.8 billed hours to review supreme court schedules and oral argument scenarios; and (4) four billed hours to prepare an oral argument outline. In addition, Paiea contends that awarding DFS $3,858.38 for computer-assisted research is improper inasmuch as such expenses are a component of a law firm's overhead and are therefore already reflected in

---

5. We note that Paiea's argument can be construed so as to imply that monetary liability was in issue inasmuch as our affirmation of the circuit court's order granting summary judgment essentially reduces DFS' monthly rental obligation. Furthermore, both DFS and Paiea appear to agree that the difference between their two determinations of the "prevailing rent" serves as the basis from which the monetary value of the judgment may be calculated. How-

ever, the language of HRS § 607–14 plainly requires that the *judgment* serve as the basis for calculating the twenty-five per cent cap. Both DFS' and Paiea's calculations as to the twenty-five per cent cap are inapposite inasmuch as it is not the judgment, but rather an economic incident of the judgment, that serves as the basis for their calculations. Such methodology is outside the scope of the language of HRS § 607–14.

attorneys' fees. Accordingly, Paiea argues that any award of attorneys' fees should not exceed $38,853.25.

### 1. Applying the "lodestar" method

The United States Supreme Court has previously addressed the question of what constitutes a reasonable fee, in the context of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (West 1976), stating that:

> [t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.

*Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In *Montalvo v. Chang,* 64 Haw. 345, 358–359, 641 P.2d 1321, 1331 (1982) (citations omitted), *overruled on other grounds by Chun v. Bd. of Trustees of the Employees' Retirement Sys. of the State of Hawai'i,* 92 Hawai'i 432, 992 P.2d 127 (2000),[6] we endorsed a virtually identical method of calculation in the context of a class action litigation where the recovery resulted in a common fund from which the attorneys' fees were to be drawn:

> In essence, the initial inquiry is "how many hours were spent in what manner by which attorneys." The determination of time spent in performing services "within appropriately specific categories," is followed by an estimate of its worth. "The value of an attorney's time generally is reflected in his normal billing rate." But it may be "necessary to use several different rates for the different attorneys" and the reasonable rate of compensation may differ "for different activities." And when the hourly rate reached through the foregoing analysis is applied to the actual hours

worked, a "reasonably objective basis for valuing an attorney's services" is derived. The inquiry, however, does not end here, for other factors must be considered. The product of the first and second steps nevertheless serves as the "lodestar" of the ultimate fee award.

> The first of the factors to be considered for possible adjustment of the "lodestar" determination is "the contingent nature of success," a factor which may be of special significance where "the attorney has no private agreement that guarantees payment even if no recovery is obtained." The second additional factor to be examined "is the extent, if any, to which the quality of an attorney's work mandates increasing or decreasing" the "lodestar" figure. If the court decides an adjustment is justified on this basis, it "should set forth as specifically as possible the facts that support . . . (its) conclusion."

The foregoing algorithm is commonly referred to as the "lodestar" method. *Id.; see also Chun,* 92 Hawai'i at 434, 992 P.2d at 129 ("In *Montalvo,* we adopted the *'lodestar'* method of awarding attorney's fees to plaintiffs' counsel in class action litigation where the recovery has resulted in the creation of a common fund from which the attorneys' fees are drawn") (emphasis added). Accordingly, we apply the "lodestar" method in the case at bar.

Our initial task is to determine how many hours were shown to have been reasonably expended. *See Sharp v. Hui Wahine,* 49 Haw. 241, 246, 413 P.2d 242, 247 (1966) (the party requesting fees has the burden to prove that the requested fees were reasonably and necessarily incurred). To that end, after a thorough examination of the submissions of DFS and Paiea as well as a careful review of the record before us, we conclude that DFS has demonstrated that it expended 105 reasonable and necessary hours on the underlying appeal.[7]

---

**6.** Although *Montalvo* was overruled by *Chun,* 92 Hawai'i at 445, 992 P.2d at 140, to the extent that it mandated an application of the "lodestar" method when calculating attorneys' fees in common fund cases, we expressly stated that "we continue to adhere to *Montalvo's* explication of the mechanics of the lodestar method." *Id.*

**7.** The following hours were shown to have been reasonably expended: Twenty-four hours of work relating to the motion to dismiss the appeal, fifty-

Our subsequent task is to determine a reasonable hourly rate. We note that four different attorneys, with four different hourly rates, worked on varying aspects of the underlying appeal. Accordingly, we conclude that the average of the four different rates constitutes a reasonable rate in the case at bar. The hourly rates for Attorneys Stubenberg, Durrett, Lam, and Zahaby are $325/hour, $225/hour, $185/hour, and $125/hour, respectively. Thus, the average rate is $215/hour.

Finally, the lodestar method instructs us to multiply the reasonable rate by the sum of reasonable hours expended. *See Montalvo*, 64 Haw. at 358–359, 641 P.2d at 1331; *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. Accordingly, applying a rate of $215/hour to a sum of 105 hours, we conclude that DFS has shown that it has incurred $22,575.00 in reasonable and necessary attorneys' fees, and $940.70 in taxes. We therefore award DFS $23,515.70 in attorneys' fees.

### 2. Computer-assisted research

■ DFS also requests $3,858.38 for computer-assisted research charges "as an element of its attorneys' fee recovery." Paiea, on the other hand, contends that the inclusion of computer-assisted research charges in any award of attorneys' fees is improper inasmuch as computer-assisted research charges are already incorporated into a law firm's overhead and are thus already reflected in the attorneys' fees charged.

Although we have not previously had occasion to pass upon the foregoing issue, the Intermediate Court of Appeals [hereinafter "ICA"], in *Bjornen v. State Farm Fire and Casualty Co.*, 81 Hawai'i 105, 912 P.2d 602 (App.1996), squarely addressed a request for an award of computer-assisted research costs.[8] The ICA initially noted that several treatises regarded the costs related to computer-assisted research as subsumed within an attorney's fee and therefore such costs may not be awarded in addition to attorneys' fees.[9] *Id.* at 107, 912 P.2d at 604. The ICA

six hours of work in connection with the answering brief, and twenty-five hours for all remaining work. The concurring opinion, relying upon *Price v. AIG Ins. Co.*, 107 Hawai'i 106, 111 P.3d 1 (2005) contends that this court is required to provide an explanation of the reasons underlying a substantial reduction of the requested fees. *See* concurring opinion, at 226–227, 131 P.3d at 509–511. *Price* is inapposite authority for the following reasons. First, in *Price*, we "remind[ed] all judges to specify the grounds for awards of attorneys' fees and the amounts awarded with respect to each ground." *Id.* at 113, 111 P.3d at 8. The "grounds" for award of fees refers to the legal basis for the claims, such as assumpsit or tort. *Id.* It does not require a court to give an item-by-item explanation of the requested fees allowed where, as here, the record provides a readily apparent rationale-to wit, the documentation accompanying the fee request does not support the amount requested. *See Finley v. Home Ins. Co.*, 90 Hawai'i 25, 39, 975 P.2d 1145, 1159 (1998) (stating that "[a] detailed explanation of the rationale underlying the reduction in attorneys' fees awarded is not necessary"); *Ranger Ins. Co. v. Hinshaw*, 103 Hawai'i 26, 33, 79 P.3d 119, 126 (2003) ("The reasonableness of an expenditure of attorneys' fees is a matter within the discretion of the circuit court ... [and, thus, a] detailed explanation of the rationale underlying the reduction in attorneys' fees awarded is not necessary. However, the denial or reduction of attorneys' fees must have support in the record."). Second, as we explained in *Price*, the purpose of requiring a lower court to explain the legal basis for the fee award and the amount awarded was to enable us

to "effectively review" the fee award. *Id.* In the case at bar, we are not reviewing a lower court's fee award.

8. We have, however, impliedly endorsed the ICA's ruling in *Bjornen*, in our subsequent opinion in *Bush v. Watson*, 81 Hawai'i 474, 478 n. 6, 918 P.2d 1130, 1134 n. 6 (1996). In *Bush*, one of the appellees argued that "the circuit court did not abuse its discretion in awarding costs for computer assisted legal research (CALR) charges." *Id.* Although our holding in *Bush* rendered any consideration of the appellee's argument unnecessary, we opted to provide guidance inasmuch as "the issue of costs may arise in subsequent proceedings." *Id.* Accordingly, we observed that "the [ICA] recently rejected CALR as a component of costs. [*Bjornen*, 81 Hawai'i at 107–109, 912 P.2d at 604–606.]" *Id.*

9. Specifically, the ICA stated that:

6 J. Moore, *Moore's Federal Practice*, 54.77[8] (2d ed.1986) states that "computer research is generally treated as a lawyer's cost and not taxable as ordinary costs[.]" (Footnote omitted). Similarly, 20 Am.Jur.2d *Costs* § 61 (1995) states that "[t]he expense of computer-aided research is also a component of attorney's fees, and like any other legal research such expense cannot be taxed as item of cost in addition to the attorney's fees award." (Footnote omitted). These conclusions are confirmed by the Annotation on the *Recoverability of Cost of Computerized Legal Research Under*

subsequently conducted a survey of the federal jurisdictions, stating that:

> [t]he majority of federal courts subscribe to the view that costs of computer legal research "are properly reflected as part of the law firm's overhead and, as such, are a factor to be included in the setting of attorneys fees as opposed to ordinary costs." *In re San Juan Dupont Plaza Hotel Fire Litigation,* 142 F.R.D. 41, 47 (D.Puerto Rico 1992). *See Wolfe v. Wolfe,* 570 F.Supp. 826, 828 (D.S.C.1983) (WESTLAW charges are incidental to attorneys' services and, therefore, are not considered to be valid costs); *Friedlander v. Nims,* 583 F.Supp. 1087, 1088–89 (N.D.Ga.1984) (expenses of computerized legal research are properly considered a component of

> 28 USCS § 1920 or Rule 54(d), Federal Rules of Civil Procedure, 80 A.L.R.Fed. 168 (1986).

*Bjornen,* 81 Hawai'i at 107, 912 P.2d at 604 (brackets in original).

10. We note that there remains some degree of disagreement among the federal jurisdictions regarding the treatment of costs related to computer-assisted research. *See Robinson v. Ariyoshi,* 703 F.Supp. 1412, 1436–1437 (D.Haw.1989), *rev'd on other grounds,* 933 F.2d 781 (9th Cir. 1991). Nevertheless, a significant amount of federal jurisdictions, not mentioned in the ICA's opinion, are in accord with the ICA's conclusion. *See, e.g., United States v. Merritt Meridian Constr. Co.,* 95 F.3d 153, 172 (2nd Cir.1996) ("We agree that computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost"); *Standley v. Chilhowee R–IV School Dist.,* 5 F.3d 319, 325 n. 7 (8th Cir.1993) (stating that "time spent doing the computer based research is compensable as part of counsels' billable hours. It is the actual cost to the attorneys for their on-line computer time that . . . is a component of attorney fees and cannot be recovered in addition to the fee award"); *Montgomery v. Aetna Plywood, Inc.,* 231 F.3d 399, 409 (7th Cir.2000) ("Computer research charges are considered a form of attorneys' fees. The idea is that computer-assisted legal research essentially raises an attorney's average hourly rate as it reduces (at least in theory) the number of hours that must be billed. As a form of attorneys' fees, the charges associated with such research are not separately recoverable expenses") (citations omitted).

11. In *Haroco, Inc. v. American Nat'l Bank and Trust Co. of Chicago,* 38 F.3d 1429, 1440–1441 (7th Cir.1994) (emphasis added), the United States Court of Appeals of the Seventh Circuit [hereinafter "seventh circuit"], stated that:

attorney fees and are not recoverable as costs).

*Id.* at 108–109, 912 P.2d at 604–605. Accordingly, the ICA ruled that "disbursements for computerized legal research . . . are a component of attorney fees and are not taxable costs." *Id.* at 109, 912 P.2d at 606.[10] Inasmuch as we agree with the ICA's ruling, we are also compelled to conclude that the computer-assisted research charges in the present case are not recoverable as separately billed attorneys' fees.

Although it appears that some federal jurisdictions might accept DFS' argument,[11] our endorsement of *Bjornen* precludes us from traversing a similar analytical path. Where a law firm passes its computer-assist-

> [t]he added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching. Therefore, *we see no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on a computer and bills for both the time and the computer fee.* In both cases the total costs are attorney's fees and may not be recovered as 'costs.'

Also, in *In re Cont'l Ill. Sec. Litig. v. Cont'l Ill. Corp.,* 962 F.2d 566, 570 (7th Cir.1992) (some emphasis in original, some emphasis added) (citations omitted), the seventh circuit stated the following:

> The [trial] judge refused to allow the lawyers to bill *any* of their out-of-pocket expenses of using a computerized legal research service. . . . He thought those expenses should be part of the lawyers' overhead. *This was another clear error.* If computerized research expense were customarily treated in this fashion, lawyers' hourly rates would be even higher than they are, requiring an adjustment in the lodestar. But the more important point is that the market—the paying, arms' length market-reimburses lawyers' LEXIS and WESTLAW expenses, just as it reimburses their paralegal expenses, rather than requiring that these items be folded into overhead. Markets know market values better than judges do. And as with paralegals, so with computerized research: if reimbursement at market rates is disallowed, the effect will be to induce lawyers to substitute their own, more expensive time for that of the paralegal or the computer.

Consequently, although the seventh circuit appears to agree with the ICA that computer-assisted research charges are not recoverable as taxable costs, there is some evidence to suggest that it might nevertheless award such computer-assisted research charges as a separately billed component of attorneys' fees.

ed research charges to a client, allowing that client to recover those charges as an award of attorneys' fees debases the rule stated in *Bjornen* inasmuch as computer-assisted research charges would henceforth be recoverable so long as the party seeking recovery classifies the charges as separately billed "attorneys' fees" rather than "taxable costs." We thus decline to render *Bjornen* susceptible to such "form over substance" arguments and take the present opportunity to expressly state what the rule in *Bjornen* logically implies—that computer-assisted research charges are subsumed within a law firm's overhead and therefore the client may not recover such costs by classifying them as separately billed attorneys' fees.

Accordingly, we deny DFS' request to recover $3,858.38 in computer-assisted research charges.

## D. Referral

█ Also, considering the particular circumstances of the present case, we refer this matter to ODC for investigation. In doing so, we do not express any opinion as to whether violations of the HRPC have occurred.

Although the concurring opinion takes issue with our decision to refer the matter to ODC without further explanation, *see* concurring opinion, at 229–231, 131 P.3d at 512–514, our approach is no different than that taken in *Lee v. Aiu*, 85 Hawai'i 19, 35, 936 P.2d 655, 671 (1997). In *Lee*, we referred the record to ODC for its review without an explanation of specific misconduct, other than noting that counsel may have engaged in conduct that did not comport with the HRPC. *Id.*

Additionally, contrary to the concurring opinion's assertion, we have not "overlook[ed] the fact that this court, in *Lee*, provided a detailed description of the actions of the defendant-attorney in tortiously interfering with the contractual relations between the plaintiff and the co-defendant in that case[.]" Concurring opinion, at 231, 131 P.3d at 514 (brackets added). We recognize that, in *Lee*, this court explicated in detail the actions of

the defendant-attorneys which led to a referral to ODC. *See Lee*, 85 Hawai'i at 32, 936 P.2d at 668 ("Based upon our examination of the record, we believe that there is substantial evidence to support the jury's findings that the [defendant-attorneys] were cognizant of the settlement agreement between Lee and Aiu and that they intentionally proceeded to encourage Aiu to breach that agreement by convincing him to enter into a new contract with them. The evidence further supports the finding that the [defendant-attorneys] were without justification, that is, that they were motivated only by their own personal gain. This is particularly so in light of: (1) [the defendant-attorney's] advice to Aiu that $25,000 for Aiu's putative interest in the Keha Place property was a ridiculous sum of money and that Aiu would be ill-advised to honor it; and (2) the [defendant-attorneys'] subsequent acquisition of Aiu's putative interest for that same 'ridiculous' sum.") (brackets added). However, it is obvious that our description of the specific actions of the defendant-attorneys was in the context of analyzing the tortious interference with contractual relations claim. Notably, in the section of the opinion entitled, "Referral to the ODC," we did not summarize those actions nor refer to them with any degree of specificity. *See Lee*, 85 Hawai'i at 35, 936 P.2d at 671. Rather, we merely stated that "it appears from the record in this case that [the defendant-attorney] engaged in conduct that may not comport with the HRPC." *Id.* (brackets added). Accordingly, *Lee* does not properly stand for the proposition that we may abrogate the general rule, set forth in *State v. Mata*, 71 Haw. 319, 324, 789 P.2d 1122, 1125 (1990), which plainly states that "[w]e cannot pass in these proceedings on whether or not the matters referred to [ODC] involved unprofessional conduct." *Id.* The distinction lies in the fact that in *Lee*, this court was required to set forth the actions of the attorneys in order to affirm the trial court's finding of liability with respect to the tortious interference with contractual relations claim filed against the attorneys *as party-defendants*.[12] In the present case, we are simply faced with a request for attorneys

---

12. We note further that as party-defendants, the attorneys in *Lee* were provided with a full and

fair opportunity to justify their actions, a right not available to the attorneys in the present case.

fees, and, inasmuch as there was no independent claim filed against the attorneys as party-defendants, we perceive no reason to risk unduly influencing any forthcoming ODC investigation by extrapolating further.[13]

Given the circumstances of the present case, it is inappropriate for this court to express any opinion at this point in time as to whether the matters referred to ODC involve unprofessional conduct.[14] *See Mata*, 71 Haw. at 324, 789 P.2d at 1125. The explanation proffered by the concurring opinion contravenes this well settled principle by repeatedly expressing an opinion as to the unreasonableness of the fees that were incurred in this case. Such expressions manifestly articulate violations of the HRPC.[15] We therefore decline to selectively discuss specific fee request items in our referral.

## III. CONCLUSION

Based on the foregoing, we grant in part and deny in part DFS' request for attorneys' fees incurred in connection with the underlying appeal by awarding DFS $22,575.00 in fees, $940.70 in taxes, for a total of $23,515.70. Furthermore, we refer the record of this matter to ODC for investigation. Accordingly, we direct the Clerk of the Supreme Court to transmit a certified copy of this order to ODC. We additionally direct all clerks of the several courts of this state to make available any records and provide certified copies, at no additional cost, of any documents requested by ODC in connection with its investigation.

MOON, C.J., concurring separately, with whom LEVINSON, J., joins.

Concurring Opinion by MOON, C.J.

I agree with the award of reasonable attorneys' fees in the amount of $23,515.70, as opposed to the requested amount of $139,121.16, and the decision to refer this matter to the Office of Disciplinary Counsel (ODC). However, I write separately because I believe it is unfair to the parties and the attorneys for the majority to merely state its conclusions that 105 hours (or $23,515.70 in attorney's fees) is reasonable and 454.9 hours (or $115,966.16) is not.

### I. DISCUSSION

#### A. DFS' Requested Attorneys' Fees Are Unreasonable

HRS § 607–14 authorizes this court to award attorneys' fees "that the court determines to be reasonable[.]" The burden is on the prevailing party to prove such fees were reasonably and necessarily incurred. *See Smothers v. Renander*, 2 Haw.App. 400, 408, 633 P.2d 556, 563 (1981); *see also Sharp v. Hui Wahine, Inc.*, 49 Haw. 241, 247, 413 P.2d 242, 246 (1966). The United States Supreme Court has stated that:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services . . . .
>
> The . . . court also should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours

13. The concurring opinion also asserts that our failure to provide an explanation for the referral will prevent ODC from conducting a thorough investigation. *See* concurring opinion, at 229, 131 P.3d at 512. However, in light of the fact that ODC will have access to all records before this court and other state courts, as well as any documents that it may request, ODC will clearly have the ability to conduct a full and complete investigation.

14. Expository explanations may have the unavoidable effect of the court directly or indirectly

expressing its views of the conduct in question prior to its investigation by ODC. Such problematic explanations are replete throughout the concurring opinion. *See* concurring opinion, at 228–229, 131 P.3d at 511–512.

15. HRPC Rule 1.5 requires that "[a] lawyer's fees shall be reasonable." HRPC Rule 8.4 provides that "[i]t is unprofessional misconduct for a lawyer to violate or attempt to violate the rules of professional conduct." Characterizing fees as unreasonable sets forth a violation of the HRPC.

that are excessive, redundant, or otherwise unnecessary[.]

*Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citation omitted) (emphases added); *see also Chun v. Bd. of Trustees of the Employees' Retirement Sys. of the State of Hawai'i*, 92 Hawai'i 432, 434 n. 1 992 P.2d 127, 129 n. 1 (2000) ("The 'lodestar' equals the number of hours reasonably spent on a case multiplied by a reasonable hourly rate[.]" (Citation omitted)).

In determining "the number of hours reasonably expended on the litigation," the majority simply concludes:

> [A]fter a thorough examination of the submissions of DFS and Paiea as well as a careful review of the record before us, we conclude that the DFS has demonstrated that it expended 105 reasonable and necessary hours on the underlying appeal.

Majority op. at 505. DFS requested a total of 559.9 hours of attorneys' fees incurred on appeal. Thus, based on the 105 hours awarded as reasonable, the majority has "exclude[d] from [the] initial fee calculation hours that were 'not reasonably expended.' " *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. The majority, however, neglects to explain its reasoning for excluding the hours it deemed to be unreasonable. Where the issue involves a request for attorneys' fees incurred on appeal, our responsibility is no different than those of trial judges, whom we have previously "remind[ed] ... to specify the grounds for awards of attorneys' fees and the amounts awarded with respect to each ground." *Price v. AIG Ins. Co.*, 107 Hawai'i 106, 113, 111 P.3d 1, 8 (2005). It is only fair to the parties and attorneys involved, especially where, as here, the requested fees are substantially reduced, and regardless of whether or not the matter is referred to the ODC for investigation.[1] Moreover, an expla-

---

1. The majority believes that *Price* is "inapposite authority," majority opinion, at 222–223, 131 P.3d at 505–506 n. 7, because, *inter alia*, the reference to specifying the "grounds" for fee awards referred to "the legal basis ... such as assumpsit or tort." *Id.* In *Price*, the issue of apportioning fees between assumpsit and non-assumpsit claims was clearly before the trial court; however, we could not review the ultimate award because the trial court had failed to provide an explanation as to how it resolved the apportionment issue. As importantly, the trial court failed to provide an explanation for reducing the fee request of $21,386 to $20,000. Because the trial court failed to provide an explanation, *i.e.*, to specify the grounds, we were unable to determine whether the fees were reduced based on an apportionment between assumpsit and non-assumpsit claims and/or whether the fees were reduced because the unawarded fees were deemed unreasonable, which prompted the remand for a redetermination of the fee request. Thus, when reading the entire discussion in context, our reminder to the trial judges to "specify the grounds" could not be reasonably interpreted as a directive to merely state "the legal basis."

  Additionally, the majority cites to *Finley v. The Home Insurance Group*, 90 Hawai'i 25, 975 P.2d 1145 (1998), and *Ranger Insurance Co. v. Hinshaw*, 103 Hawai'i 26, 79 P.3d 119 (2003), for the proposition that a detailed explanation of the rationale underlying a reduction in attorneys' fees is not necessary as long as there is support in the record. Majority op. at 505 n. 7. I agree with the general proposition that an explanation for reducing a fee award would not be necessary when the record provides an apparent or discernible rationale-as was the case in *Finley* and *Ranger*. In *Finley*, it was undisputed that defen- dant, as the prevailing party, was entitled to an award of fees. *Finley*, 90 Hawai'i at 38, 975 P.2d at 1145. Defendant's fee request, however, included work related to an issue upon which it did not prevail, *i.e.*, plaintiffs' breach of settlement agreement claim (count V), which was resolved in favor of the plaintiffs through the defendant's payment of $100,000. *Id.* This court stated: "Because the billing statements submitted by [defendant] apparently requested work on this claim [ (count V) ], the circuit court had sufficient justification for reducing the award from the amount of fees requested by [defendant]." *Id.* at 39, 975 P.2d at 1146. Thus, in *Finley*, the rationale for reducing the fee award was apparent. Likewise, in *Ranger*, it was apparent from the record that appellant was entitled to fees pursuant to HRS § 607–14. Therefore, this court held that the circuit court erred in not awarding appellant attorneys' fees based on its finding that appellant had failed to establish valid legal grounds for the fee request. Consequently, the court in *Ranger* remanded the case for a determination of fees pursuant to HRS § 607–14.

  The reduction of fees in the case at bar, however, is not simply a matter of eliminating hours that relate to a single claim or count; nor is it a matter of a party failing to sustain its burden of establishing a valid legal basis for the requested fees when such basis existed. Rather, this is a case that requires a closer scrutiny of the work described and whether the work was reasonable and necessary in light of the issues involved on appeal. Therefore, it can hardly be said that the record in this case provides an apparent or discernible rationale for the majority's conclusory statement that $23,515.70 in attorneys' fees is reasonable and $115,966.16 is not.

nation of the reasons for substantially reducing a fee request that, in turn, prompts a referral to the ODC is beneficial to the members of the bar, in general. *See Akinaka v. Disciplinary Bd.*, 91 Hawai'i 51, 57–58, 979 P.2d 1077, 1083–84 (1999) (citations omitted). In my view, the following examples illustrate the reasoning underlying the exclusion of 454.9 hours.

The itemized bills attached to the request indicate that the Stubenberg firm spent 205.7 hours (25.7 eight-hour work days), amounting to $52,086.42 in fees, on the appeal between the time Paiea (the appellant) filed its notice of appeal and its statement of jurisdiction. During that time, however, DFS (the appellee) did not file any documents in this court and Paiea filed only one document: a request for transcripts. Nearly 40 of the 205.7 hours (five eight-hour work days) were expended researching appellate procedure, including: (1) "legal research regarding procedure on appeal" (up to 3.2 hours);[2] (2) "legal research regarding restricting issue on appeal" (up to 5.9 hours); (3) "legal research regarding extent of appeal jurisdiction" (up to 6.5 hours); (4) "research [of] law regarding record on appeal" (up to 4.5 hours); (5) "research [of] law regarding record on appeal; stay of appeal; HRCP & HRAP" (up to 6.5 hours); (6) "legal research"[3] (3.8 hours); (7) "legal research regarding appellate procedure" (4.8 hours); and (8) "outlin[ing] appellate procedure" (5.5 hours). The nature of this appeal was not complex and clearly did not warrant forty hours researching the appellate rules and procedure. Thus, absent any explanation by DFS or its attorneys as to the necessity and reasonableness of such research, most of the research on appellate procedure was unnecessary.

Additionally, during this time period, the Stubenberg firm charged DFS for reviewing: (1) "appeal materials from Paiea" (up to 3.2 hours); (2) "various materials from McCorriston" (2.5 hours); (3) "material for record on appeal" (3.8 hours); (4) "materials regarding appeal" (up to 5.9 hours); (5) "pleadings from McCorriston" (2.5 hours); (6) "all documents and correspondence; letter to apposing [sic] counsel" (5.5 hours); and (7) "letter from McCorriston [and] letter from Kemp" (up to 6.5 hours), totaling nearly 29 hours (3.6 eight-hour work days). Inasmuch as the firm represented DFS before the circuit court, much of the time spent re-reviewing "all documents and correspondence" appears excessive. Further, because Paiea had not yet filed its opening brief and, thus, the Stubenberg firm did not know for certain which issues would be raised on appeal, I question why the firm spent nearly 16 hours (two eight-hour work days) researching "operating expenses," "contract construction," "lease construction," "fixed CAM provisions," "consequences of payment of excess CAM," and "contract/lease issues."

The Stubenberg firm billed 4.5 hours for researching the "collection of attorney fees" even before Paiea filed its jurisdictional memorandum. The fact that the firm could not have anticipated which issues would be raised on appeal or whether DFS would prevail on appeal leads me to conclude that the research regarding attorneys' fees was related to *fees incurred before the circuit court.* Subsequently, the Stubenberg firm again billed DFS up to 5.2 hours for "legal research regarding procedure to recover attorney fees in *[c]ircuit [c]ourt.*" (Emphasis added.) Such time spent researching the issue of attorneys' fees incurred in the *circuit court* is clearly not recoverable as attorneys' fees incurred *on appeal.*

It is also noteworthy that, during this appeal, DFS filed only three documents in this court: (1) the motion to dismiss; (2) a one-page letter informing Paiea of its request for extension of time to file its answering brief; and (3) the sixteen-page answering brief. According to the itemized bills, the Stubenberg firm expended a total of 100.4 hours

---

**2.** I note that the itemized bills are insufficiently detailed for this court to determine exactly how much time was spent conducting this research. The bill merely states that 3.2 hours were spent "[r]eview[ing] appeal materials from Paiea; legal research regarding procedure on appeal[.]" As such, although the Stubenberg firm invested "up to" 3.2 hours researching appellate procedure, it is impossible to determine precisely how many hours were dedicated to such research.

**3.** The itemized bills do not indicate which issues were researched.

(12.6 eight-hour work days) preparing and drafting the motion to dismiss and 227.2 hours (28.4 eight-hour work days) drafting its answering brief (excluding time claimed as research). In the motion to dismiss, DFS challenged Paiea's attempt to vacate the appraisal report based on Paiea's failure to "file a motion to vacate, modify or correct the award[.]" In its answering brief, DFS repeated that argument and contended that Paiea failed to prove the appraiser was partial and that "all matters of indefiniteness [of the appraisal report] alleged by Paiea ... are hopelessly intertwined with vacating an award[.]" All three of these assertions are not novel issues and were fully briefed and argued before the circuit court in the parties' pleadings and at the November 14, 2002 and January 27, 2003 hearings.

Lastly, the Stubenberg firm claims to have spent more than an entire work day (8.8 hours) on its request for an extension of time to file its answering brief. Specifically, the firm alleges that it spent at least 6.5 hours researching the procedure for requesting such an extension,[4] which required only that it review HRAP Rule 29 (2000), clearly labeled "Extensions of time for briefs."[5] The firm also claims to have spent 0.80 hours (48 minutes) requesting by telephone an "[o]ral extension ... via supreme court clerk." That same day, the Stubenberg firm also expended 1.5 hours (90 minutes) "[d]raft[ing]/send[ing] letter notice regarding

extension" to Paiea.[6] In sum, the Stubenberg firm billed more than one eight-hour work day to obtain a simple, standard extension of time to file DFS' answering brief and to send a three-sentence letter, notifying Paiea of the new filing deadline.

### B. *Reasonable Attorneys' Fees*

Based on the two-volume record on appeal, the documents filed in this court, and the issues presented by the parties, I believe that the following breakdown is reasonable and reflects the work necessary to prosecute the appeal: (1) twenty-four hours of work relating to the motion to dismiss; (2) fifty-six hours of work relating to the answering brief; (3) 0.5 hours of work relating to the letter to Paiea, *see supra* note 6; and (4) 24.5 for all remaining work (reviewing the record on appeal and appellate rules and procedure, reviewing correspondence between the parties, conferences, etc.).

I also agree that the average hourly rate of $215 is appropriate and, consequently, agree with the award of $23,515.70 in attorneys' fees to DFS.

### C. *Referral to the ODC Requires Sufficient Facts*

Canon 3(D)(2) of the Revised Code of Judicial Conduct provides:

> clerk within the original time for filing of the brief.
> **(b) By the Appellate Court.** Motions for further extensions of time to file briefs will be approved by a judge or justice only upon good cause shown.
> The submission of a request or motion for extension does not toll the time for filing a brief.

**4.** DFS additionally notes that it spent approximately 3.2 hours conducting "legal research regarding procedure on appeal," 4.8 hours conducting "legal research regarding appellate procedure," and 5.5 hours "[o]utlin[ing] appellate procedure." It is unclear whether any portion of this time was spent researching the extension of time to file its answering brief.

**5.** HRAP Rule 29 provides in its entirety:

> **(a) By the Appellate Clerk.** Upon timely (1) oral request, or (2) written motion, or (3) letter request by a party, the appellate clerk shall grant one extension of time for no more than 30 days for the filing of an opening or answering brief and no more than 10 days for the filing of a reply brief. The appellate clerk shall note on the record that the extension was granted and the date the brief is due. The requesting party shall notify all other parties that the extension was granted and shall file a copy of the notice in the record. A request is timely only if it is received by the appellate

**6.** The letter sent to Paiea stated in its entirety:

> Dear Becky:
> Pursuant to HRAP 29(a), I made an oral request for a 30–day extension of time for filing our Answering Brief in the above matter. This letter is to notify you that the Civil Documents Clerk granted my request. The new filing deadline for our Answering Brief is August 12, 2003.
> Sincerely,
> STUBENBERG & DURRETT
> /s/
> Jon A. Zahaby

A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Hawai'i Rules of Professional Conduct [(HRPC)] should take appropriate action. A judge having knowledge that a lawyer has committed a violation of the [HRPC] that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the appropriate authority [*i.e.*, the ODC].

In so doing, "[e]thics complaints submitted to ODC must contain sufficient facts to enable ODC to conduct a thorough investigation." *Akinaka v. Disciplinary Bd.*, 91 Hawai'i 51, 56 n. 6, 979 P.2d 1077, 1082 n. 6 (1999). As previously stated, our responsibility to specify the basis for granting or denying a request for attorneys' fees, in whole or in part, is no different than those of trial judges. *See Price*, 107 Hawai'i at 113, 111 P.3d at 8. The reason is obvious—it not only gives the parties and their attorneys an understanding of the basis for the court's ruling, but facilitates review on appeal. It is important to note, however, that, when concurrently referring a matter that involves a ruling on a request for attorneys' fees to the ODC, I recognize that the ODC's "review" is not for the purpose of determining the correctness of the fees awarded. The focus of the ODC's inquiry is whether counsel's conduct and the fees charged comport with the requirements of the HRPC. Obviously, one of the facts to be considered by the ODC in its investigation of this matter will be the significant reduction imposed by this court in awarding fees to the prevailing party. The majority's conclusory statement that $23,515.70 in attorneys' fees is reasonable, but the total amount requested ($139,121.16) is not, without any explanation, forces the ODC to speculate as to the grounds upon which this court deemed a significant portion of the requested fees to be unreasonable. Those grounds, discussed *supra* in sections I.A. and I.B., provide the underlying support for the ultimate award of attorneys' fees in this case. Consistent with the general principle espoused in *State v. Mata*, 71 Haw. 319, 325, 789 P.2d 1122, 1125 (1990) (stating that "[w]e cannot pass in these proceedings on whether or not the matters referred to [ODC] involved unprofessional conduct"), the explanation provided in support of significant reduction in attorneys fees are not to be construed as a commentary or opinion as to whether the conduct of counsel or the fees charged in this case violated the HRPC and, therefore, requires discipline. Clearly, the duty to investigate and make a recommendation to this court regarding discipline, if any, lies solely with the ODC. Providing an explanation of the reasons underlying this court's substantial reduction of the requested fees that, in turn, also provides insight as to the basis for the ODC referral, is no different an approach than that taken by this court in prior cases.

Whenever this court has made a referral to the ODC, it has provided some explanation for the referral, including citation to the HRPC, as well as a detailed description of the background of the case, often quoting from transcripts, pleadings, and exhibits contained in the record on appeal. Moreover, the explanations have also included the kinds of conclusions regarding counsel's conduct that the majority characterizes as "problematic explanations." *See* majority op. at 226 n. 14, 131 P.3d at 509 n. 14. It is important to keep in mind that, in many instances, the explanations and conclusions—although providing insight for a referral to ODC—were discussed in the context of resolving the merits of the appeal itself. For example, in *State v. Tafoya*, 91 Hawai'i 261, 982 P.2d 890, (1999), we provided numerous excerpts of defendant's trial testimony, *see id.* at 264–66, 982 P.2d at 893–95, regarding his prior convictions and evidence of his membership in a youth gang or unconvicted arrests that were intentionally introduced to bolster the subjective reasonableness of defendant's self-defense argument. *Id.* at 267, 982 P.2d at 896. This court concluded that, "[w]hile some information about [defendant's] upbringing may have been relevant to his subjective reaction to violence, a laundry list of prior violent acts, arrests, and prior convictions *was plainly unwarranted and unjustifiable.*" *Id.* at 268, 982 P.2d at 897 (emphasis added). We noted that,

> [b]ecause trial counsel's action may warrant disciplinary action, we refer this case to the Office of Disciplinary Counsel. *Ac-*

cord *Bettencourt v. Bettencourt*, 80 Hawai'i 225, 230, 909 P.2d 553, 558 (1995) (Where attorney's actions "[did] not comport with the precepts embodied in the [Hawai'i Rules of Professional Conduct (HRPC)], we are compelled to refer the supreme court record in this case, as we must pursuant to the Revised Code of Judicial Conduct Canon 3(D)(2) (1992), to the Office of Disciplinary Counsel for its review and appropriate action." (Footnote omitted.)). *See also* HRPC Rule 1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.").

*Id.* at 268 n. 6, 982 P.2d at 897 n. 6. *See also Lester v. Rapp*, 85 Hawai'i 238, 242, 942 P.2d 502, 506 (1997) (quoting excerpts from court hearing and concluding that "record clearly demonstrates that [defendant-attorney] *misrepresented* the facts to the court," as well as citing Hawai'i Code of Professional Responsibility, Disciplinary Rules 1–102(A)(4); 7–102(A)(3), (5) and (7) (emphasis added)).

In *Lee v. Aiu*, 85 Hawai'i 19, 936 P.2d 655 (1997), this court, in affirming the defendant-attorney's liability to plaintiff on the tortious interference with contractual relations claim, stated, "it appears from the record in this case that [defendant-attorney] engaged in conduct that may not comport with the HRPC." *Id.* at 35, 936 P.2d at 671. In referring the matter to the ODC, we specifically cited HRPC Rule 1.2(a) (stating that a lawyer shall abide by client's decision whether to accept a settlement offer), HRPC Rules 1.8(a) and (j) (dealing with conflicts of interest such as entering into a business transaction with a client or acquiring a proprietary

interest in a matter the lawyer is handling for the client), and HRPC 8.4 (regarding dishonesty, fraud, deceit or misrepresentation).

The majority maintains that the approach it has taken in this case

is no different than that taken in *Lee v. Aiu*, 85 Hawai'i 19, 35, 936 P.2d 655, 671 (1997). In *Lee*, we referred the record to ODC for its review without an explanation of specific misconduct, other than noting that counsel may have engaged in conduct that did not comport with the HRPC.

Majority op. at 225, 131 P.3d at 508. The majority, however, overlooks the fact that this court, in *Lee*, provided a detailed description of the actions of the defendant-attorney in tortiously interfering with the contractual relations between the plaintiff and the co-defendant in that case, including the fact that, in opining that the defendant-attorney "engaged in conduct that may not comport with the HRPC," *id.*, this court cited to three possible HRPC violations, specifically citing HRPC Rules 1.2 (scope of representation), 1.8 (conflict of interest, prohibited transactions), and 8.4 (misconduct).[7] Thus, the lack-of-explanation-approach taken in this case by the majority is contrary to, not consistent with, the approach taken in *Lee*.

In cases where the possible HRPC violations did not occur at the trial level, but on appeal, we have similarly provided the ODC with the requisite explanation to allow it to conduct a meaningful investigation. For example, in *AIG Hawai'i Ins. Co. v. Bateman*, 82 Hawai'i 453, 923 P.2d 395, *as amended*, (1996),—the third in a series of appeals— defense counsel were referred to ODC for

---

7. In attempting to distinguish *Lee*, the majority states:

it is obvious that our description of the specific actions of the defendant-attorney[ ] was in the context of analyzing the tortious interference with contractual relations claim. Notably, in the section of the opinion entitled "Referral to the ODC," we did not summarize those actions nor refer to them with any degree of specificity. *See Lee*, 85 Hawai'i at 35, 936 P.2d at 671. Rather, we merely stated that "it appears from the record in this case that [the defendant-attorney] engaged in conduct that may not comport with the HRPC." *Id.* (brackets added).

Majority opinion at 225, 131 P.3d at 508. The explanation in this concurring opinion is, likewise, provided in the context of analyzing the merits of the request for attorneys' fees and in articulating the basis for the significant reduction and ultimate award of fees. *See Price*, 107 Hawai'i at 113, 111 P.3d at 8. Moreover, inasmuch as "the specific actions of defendant-attorney" had already been discussed in previous sections in the *Lee* opinion, it is patently obvious that regurgitating a description of those actions in the referral section of the opinion would have been redundant and that a "summar[y of] them with

continuing to prosecute the first appeal that had been rendered moot because the parties had settled ten days after filing the notice of appeal. Unaware that the case had settled, the court issued its decision, including a lengthy dissenting opinion, in the first appeal. The existence of the settlement was discovered a year later, when the defense appealed their unsuccessful motion to rescind the settlement agreement. Because the referral to the ODC was not based upon events that occurred at the trial level that would be demonstrated in transcripts, exhibits, pleadings, and the like, we met our responsibility to provide sufficient information, as required by *Akinaka,* by providing a detailed background and discussion of the case, including citations to the HRPC Rules 3.1 (meritorious claims and contentions) and 3.3 (candor toward the tribunal). *See also Bettencourt,* 80 Hawai'i at 229, 909 P.2d at 557 (providing examples of counsel's "running sarcastic commentary, carried on in footnotes throughout the opening brief," *explaining that "[t]his kind of incivility is demeaning to the legal profession and should not be tolerated,"* (emphasis added) and citing HRPC preamble and Rule 1.1).

Thus, consistent with the past practices of this court, the explanation in sections I.A. and I.B. of this concurrence similarly provides the grounds upon which this court based its substantial reduction of the requested fees, which, in turn, provides some insight as to the reasoning that prompted this court to refer this matter to the ODC for investigation.

### D. *Possible Violations of the HRPC*

In light of the fact that the instant request seeks an excessive amount of fees and because "DFS paid these charges in full[,]" I agree with the majority's referral of this case to ODC for an investigation as to whether the Hawai'i Rules of Professional Conduct were violated. *See Bateman,* 82 Hawai'i at 460, 923 P.2d at 402, *as amended,* (1996) ("[W]e are compelled to refer the record of this case to the ODC for its review and appropriate action."); *Bettencourt,* 80 Hawai'i at 227, 909 P.2d at 555 ("[W]e are referring the supreme court record of this case to the [ODC] to determine whether the lack of professionalism demonstrated by appellant's counsel in this case violates the [HRPC]."). "Once ODC receives an ethics complaint, it conducts an investigation to see whether there is evidence that an attorney licensed to practice law in this State … has violated, by act or omission, any provision of the [HRPC]." *Akinaka,* 91 Hawai'i at 56, 979 P.2d at 1082 (citations and footnote omitted).

In the instant case, the Stubenberg firm charged DFS an unreasonable amount of fees, and Stubenberg—as the majority points out—represented to this court in his declaration that such fees were "reasonably incurred." The majority, however, neglects to mention that, in submitting the fee request on behalf of the Stubenberg firm, the Alston Hunt Floyd & Ing law firm, which had assumed representation of DFS after Paiea filed its reply brief, also represented to this court that the attorneys' fees "were reasonably and necessarily incurred."[8] However, as explained in sections I.A. and I.B., a substantial portion of the fees requested were clearly unreasonable and unnecessary. I, therefore, find it perplexing that the Alston firm—assuming it reviewed the file and the Stubenberg firm's billings in preparation of filing DFS' request for attorneys' fees—believed it appropriate to represent to this court that the fees being requested were reasonable and necessary. Even a cursory review would have indicated that the prudent approach was to avoid any misrepresentation to this court that the fees charged were reasonable by acknowledging that some fees might be unreasonable and leaving the task of arriving at a reasonable fee to the court. Alternatively, inasmuch as none of the requested fees were incurred by the Alston firm, it could have avoided making any representation as to reasonableness and necessity

any degree of specificity" was equally unnecessary.

**8.** I note that, although the request for fees is signed by Peter Knapman, the name "PAUL ALSTON" is typed below the signature. Knapman's name is not typed or printed anywhere in the request. As such, the request clearly violates HRAP Rule 32(c) (2004) ("The name of the signator shall be typed or printed under the signature.").

by simply referring the court to Stubenberg's declaration and leaving the issue of reasonableness and necessity to this court to decide.

Accordingly, based on the foregoing discussion, I agree with the majority's referral of this case to ODC inasmuch as it appears that the actions of counsel in this case may not comport with the precepts embodied in the HRPC. *See* HRPC Rules 1.1,[9] 1.5,[10] 3.1,[11] 3.3,[12] 8.3,[13] and 8.4 [14] (1994).

## II.  CONCLUSION

In light of the foregoing discussion, I agree with the majority's award of $23,515.70 in

reasonable attorneys' fees to DFS and with the referral of the records in appeal No. 25662 and Civil No. 02–1–2012 to ODC for its review and appropriate action.

---

**9.**  HRPC Rule 1.1 states:

> **Rule 1.1  COMPETENCE.**
> A lawyer shall provide competent representation to a client.  Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

**10.**  HRPC Rule 1.5 provides:

> **RULE 1.5  FEES.**
> **(a).** *A lawyer's fee shall be reasonable.*  The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent, and in contingency fee cases the risk of no recovery and the conscionability of the fee in light of the net recovery to the client;
> (9) the relative sophistication of the lawyer and the client;  and
> (10) the informed consent of the client to the fee agreement.
> . . . .

**11.**  HRPC Rule 3.1 provides in pertinent part that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein,

unless there is a basis for doing so that is not frivolous[.]"

**12.**  HRPC Rule 3.3 states in pertinent part that "[a] lawyer shall not knowingly:  (1) make a false statement of material fact or law to a tribunal[.]"

**13.**  HRPC Rule 8.3 provides:

> **Rule 8.3  REPORTING PROFESSIONAL MISCONDUCT**
> (a) A lawyer having knowledge that another lawyer has committed a violation of the rules of professional conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, shall inform the appropriate professional authority.
> . . . .
> **COMMENT:**
> [1]  Self-regulation of the legal profession requires that members of the profession initiate disciplinary investigation when they know of a violation of the Rules of Professional Conduct. . . . An apparently isolated violation may indicate a pattern of misconduct that only a disciplinary investigation can uncover.  Reporting a violation is especially important where the victim is unlikely to discover the offense.
> . . . .
> [3]  . . . This rule limits the reporting obligation to those offenses that a self-regulating profession must vigorously endeavor to prevent.  A measure of judgment is, therefore, required in complying with the provisions of this rule.  The term "substantial" refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware.
> (Italicized emphasis omitted).

**14.**  HRPC Rule 8.4 provides in pertinent part: "It is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"